NO. 07-08-0209-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

OCTOBER 16, 2009
______________________________

JOHN DAVID MEIER, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_________________________________

FROM THE 46TH DISTRICT COURT OF WILBARGER COUNTY;

NO. 11,063; HONORABLE DAN MIKE BIRD, JUDGE
_______________________________


Before CAMPBELL and HANCOCK and PIRTLE, JJ.
MEMORANDUM OPINION
          Appellant, John David Meier, appeals his conviction for possession of anhydrous
ammonia with intent to unlawfully manufacture a controlled substance, methamphetamine.


 
After finding appellant guilty of the indicted offense, the jury found both enhancement
allegations contained in the indictment true and sentenced appellant to confinement for life
in the Institutional Division of the Texas Department of Criminal Justice (ID-TDCJ). 
Appellant appeals the judgment of the trial court by 13 issues. Disagreeing with appellant,
we affirm the judgment of the trial court.
Factual and Procedural Background
          On November 9, 2007, Ronnie Earl Waters was driving to breakfast on U.S.
Highway 287 outside Wichita Falls, Texas, when two pickups passed him at a high rate of
speed. One of the pickups was pulling an anhydrous ammonia tank that bore the name
of Wilbarger Elevators No. 28. Because of the speed of travel, the foggy weather
conditions, and the time of the year, Waters felt that there was something not right about
what he saw. As a result, Waters took down the license plate number of each pickup and,
after finishing his breakfast, telephoned Bolton’s Crown Quality (Bolton’s) in Vernon,
Texas, to report what he had seen.


 Waters’s telephone call was answered by Rosalind
Gillis, who was the bookkeeper at Bolton’s. Gillis testified that the license plate numbers
of the two pickups given to her by Waters were 6AXTV6 and 56R653. Gillis then contacted
the general manager of Bolton’s who advised her to contact the Vernon Police Department. 
Gillis then passed the information along to the police. Gillis testified that the trailer in
question was used to hold anhydrous ammonia. 
          The Vernon police responded to the call from Bolton’s regarding a stolen anhydrous
ammonia tank. The record indicates that, during the investigation, Wendell Smith, a
sergeant with the Vernon police, contacted Taylor’s Truck Stop in Vernon to look at their
surveillance tapes for the day in question. Smith reviewed the surveillance video and had
a copy of the video for the day in question made. Steve Miller, the district manager for
Taylor’s, testified about the surveillance system at the Vernon truck stop. He identified the
DVD that had been downloaded for Smith. The DVD was admitted into evidence and,
subsequently, played for the jury. 
          Casey Callahan, a co-defendant, testified about the purpose for the trip to Vernon
and the events that transpired on November 9, 2007. The group drove to Vernon from
Haslet, Texas, which is near Fort Worth, to steal anhydrous ammonia in order to “cook”
methamphetamine to sell. The group consisted of Callahan, appellant, David Lee, Leslie
Knight and a female with the first name of Jessica. The group arrived in Vernon in
Callahan’s pickup truck, a Dodge 4x4, and appellant’s red pickup truck. Prior to the actual
theft, the participants met up at the Taylor Truck Stop in Vernon to get gas. The
surveillance tape was played for the jury and Callahan identified all of the participants,
including appellant. Callahan and Jessica stayed at Taylor’s while appellant and the other
male participants went to “scout out the anhydrous tank location,” which was very close to
the Taylor’s location. After the ammonia tank was taken, the group eventually headed
back toward the Fort Worth area traveling down U.S. Highway 287. On the return trip, the
ammonia tank was pulled by appellant’s red pickup and Callahan’s white pickup was in the
rear of the convoy. The tank was taken to a location near Lee’s home in Haslet. Callahan
admitted that she was arrested for the same offense that appellant was charged with and
entered a plea of guilty. Callahan received a five year probated sentence. Callahan was
then asked to identify a letter she received from appellant while she was in jail. She was
able to identify the letter as being written by appellant from appellant’s handwriting. After
a portion of the letter was redacted, the letter was read to the jury. Callahan was asked
what the letter meant to her and she stated that her understanding of the letter was that
appellant was requesting her to corroborate appellant’s story. 
          Lee, another co-defendant, testified that, at the time of the taking of the anhydrous
tank, he lived in Haslet, Texas. Lee admitted that he had “cooked” methamphetamine
hundreds of times and that, approximately 98 percent of the time, he used anhydrous
ammonia in the process. Lee stated that the purpose of taking the anhydrous was to
“cook” methamphetamine to use and sell. After the tank was parked near his home, Lee
stated he had returned to the tank and took liquid from it. He stated the liquid he took from
the tank was anhydrous ammonia. Lee admitted that he had pleaded guilty to the offense
appellant was on trial for and received a sentence of 10 years incarceration in the ID-TDCJ.
          As the Vernon police continued their investigation, Officer Mickey Allen took a
statement from Rosalind Gillis that identified the license plate numbers Gillis had written
down. Initially, Allen ran a check on license plate number 56R653, but that check came
back as an invalid license plate number. The sixes in the number were changed to Gs, so
that the tag read 5GRG53, and another attempt to verify the registration resulted in the
license plate number, as submitted, being registered to Ann Meier of Weatherford, Texas. 
Appellant’s booking sheet at the Wilbarger jail listed appellant’s home address as 7338
Hopi Trail, Weatherford, Texas, and Ann Meier of 7338 Hopi Trail, Weatherford, Texas,
was listed as his emergency contact. The license on the other vehicle spotted following
the ammonia tank was shown to be registered to Casey Callahan and Clinton Pullin.



          The record showed that the anhydrous ammonia tank was found about one and a
half miles from Lee’s home near Haslet. The record further shows that the tank in question
was used exclusively to store and transport anhydrous ammonia. After the tank was
returned to Bolton’s, it was determined that approximately 260 pounds of anhydrous
ammonia had been removed from the tank.
          After the close of evidence but prior to the charge being read to the jury, appellant
objected to the charge on two grounds. First, appellant objected to the inclusion of a
paragraph regarding responsibility for actions of conspirators occurring during a
conspiracy. Second, appellant objected to the application portion of the charge that
allowed appellant to be convicted as the primary actor or as a party. The trial court
overruled both objections.
          During the punishment portion of the trial, evidence was offered regarding
appellant’s prior convictions. Additionally, evidence was received regarding appellant’s
gang affiliation with either the Arian Circle or the Aryan Brotherhood. After all the
punishment evidence, appellant was sentenced to confinement for life in the ID-TDCJ.
          Appellant has appealed via 13 issues. Appellant’s issues are concerning: 1) the
legal and factual sufficiency of the evidence; 2) the sufficiency of the corroboration of
accomplice witness testimony; 3) evidentiary objections during the guilt/innocence portion
of the trial; 4) charge objections; and 5) evidentiary objections during the punishment
portion of the trial. We disagree with appellant’s contentions and will affirm the judgment
of the trial court. 
          We will first address appellant’s contention that there was insufficient corroboration
of the accomplice witness testimony.
Accomplice Witness Testimony
          By issue number seven, appellant alleges that the testimony of Casey Callahan and
David Lee was uncorroborated accomplice witness testimony and was not admissible. By
issue number eight, appellant contends that the trial court erred in denying his motion for
directed verdict based upon the lack of corroboration of Callahan’s and Lee’s testimony. 
That Callahan and Lee were accomplices was very apparent. Each had been charged with
the same offense for which appellant was standing trial. The trial court instructed that they
were accomplices in the court’s charge. The court also instructed the jury about the need
to corroborate accomplice testimony, pursuant to the Texas Code of Criminal Procedure. 
See Tex. Code Crim. Proc. Ann. art. 38.14 (Vernon 2005).


 Appellant’s seventh and
eighth issues boil down to a single issue, whether there was or was not sufficient
corroboration of the testimony of the accomplice witnesses.
          The standard by which we review the corroboration of accomplice witness testimony
requires that the reviewing court eliminate all of the accomplice testimony from
consideration and then examines the remaining portions of the record to see if there is any
evidence that tends to connect appellant to the commission of the crime. Castillo v. State,
221 S.W.3d 689, 691 (Tex.Crim.App. 2007) (citing Solomon v. State, 49 S.W.3d 356, 361
(Tex.Crim.App. 2001)). The corroborating evidence does not need to be sufficient to
establish appellant’s guilt, rather it needs only tend to connect appellant to the offense. Id. 
There simply must be some non-accomplice evidence which tends to connect appellant
to the commission of the offense alleged in the indictment. Id. However, the mere
presence of appellant at the scene of the crime is insufficient corroboration. See Malone
v. State, 253 S.W.3d 253, 257 (Tex.Crim.App. 2008). 
          In the present case, the evidence offered to corroborate the accomplices’ testimony
begins with Waters’s observation of the red pickup truck pulling the ammonia tank. 
Waters’s report of the license plate numbers of the trucks led to the discovery that one of
the trucks was registered to Ann Meier, who lived at the same address that appellant gave
as his home address on the booking sheet. There is also the surveillance video that was
played for the jury. Not only did the jury see the video during the trial, the record reveals
that the jury requested that the video be shown to them during deliberations. Finally, there
is the letter, identified as written by appellant, imploring Callahan to meet with appellant to
get their stories straight. The jury also had this evidence for review in their deliberations. 
In short, we believe this evidence tends to connect appellant with the offense. To the
extent that appellant’s other contention regarding the motion for directed verdict is directed
to the sufficiency of the corroboration of the accomplice witnesses’ testimony, the Texas
Court of Criminal Appeals has determined that, in reviewing the sufficiency of
corroboration, you do not superimpose the test for legal sufficiency on top of the
accomplice witness rule. See Solomon, 49 S.W.3d at 362; Cathey v. State, 992 S.W.2d
460, 462-63 (Tex.Crim.App. 1999). Accordingly, appellant’s seventh and eighth issues are
overruled.
Legal and Factual Sufficiency
          By issues number one and two, appellant contends that the evidence was legally
and factually insufficient to prove that he possessed anhydrous ammonia with intent to
unlawfully manufacture methamphetamine. Because appellant challenges both legal and
factual sufficiency, we are required to conduct an analysis of the legal sufficiency of the
evidence first and then, only if we find the evidence to be legally sufficient, do we analyze
the factual sufficiency of the evidence. See Clewis v. State, 922 S.W.2d 126, 133
(Tex.Crim.App. 1996).
          In assessing the legal sufficiency of the evidence, we review all the evidence in the
light most favorable to the verdict to determine whether any rational trier of fact could have
found the essential elements of the offense beyond a reasonable doubt. Jackson v.
Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Ross v. State, 133
S.W.3d 618, 620 (Tex.Crim.App. 2004). In conducting a legal sufficiency review, an
appellate court may not sit as a thirteenth juror, but rather must uphold the jury’s verdict
unless it is irrational or unsupported by more than a mere modicum of evidence. Moreno
v. State, 755 S.W.2d 866, 867 (Tex.Crim.App. 1988). We measure the legal sufficiency
of the evidence against a hypothetically correct jury charge. See Malik v. State, 953
S.W.2d 234, 240 (Tex.Crim.App. 1997).
          When an appellant challenges the factual sufficiency of the evidence supporting his
conviction, the reviewing court must determine whether, considering all the evidence in a
neutral light, the jury was rationally justified in finding the appellant guilty beyond a
reasonable doubt. See Watson v. State, 204 S.W.3d 404, 415 (Tex.Crim.App. 2006). In
performing a factual sufficiency review, we must give deference to the fact finder’s
determinations if supported by evidence and may not order a new trial simply because we
may disagree with the verdict. See id. at 417. As an appellate court, we are not justified
in ordering a new trial unless there is some objective basis in the record demonstrating that
the great weight and preponderance of the evidence contradicts the jury’s verdict. See id. 
Additionally, an appellate opinion addressing factual sufficiency must include a discussion
of the most important evidence that appellant claims undermines the jury’s verdict. Sims
v. State, 99 S.W.3d 600, 603 (Tex.Crim.App. 2003). The Court of Criminal Appeals has
recently declared that, when reviewing the evidence for factual sufficiency, the reviewing
court should measure the evidence in a neutral manner against a “hypothetically correct”
jury charge. Garza Vega v. State, 267 S.W.3d 912, 915 (Tex.Crim.App. 2008) (citing
Wooley v. State, 273 S.W.3d 260, 268 (Tex.Crim.App. 2008)).
 
 
First Issue
          Turning to the issue of the legal sufficiency of the evidence to prove that appellant
possessed anhydrous ammonia with intent to unlawfully manufacture a controlled
substance, methamphetamine, we first look at the testimony of Waters. Waters described
an anhydrous ammonia tank going down U.S. Highway 287 at a high rate of speed being
pulled by a red pickup truck. Gillis stated that the only thing the tanks were used for was
the storage and movement of anhydrous ammonia. Further, Robert Ferguson, the general
manager of Bolton’s, testified that the only purpose for the tanks, like the one stolen, is the
storage and movement of anhydrous ammonia. Additionally, the testimony of the
investigating officers was that the pickup pulling the ammonia tank was registered to Ann
Meier, who resided at 7338 Hopi Trail, Weatherford, Texas. This is the name and address
appellant furnished the jail for his emergency contact on his jail booking sheet. Appellant
also listed his address as 7338 Hopi Trail in Weatherford, Texas. Callahan identified
appellant on the surveillance video from the Taylor’s Truck Stop in Vernon as one of the
group that entered the truck stop around midnight before the tank was taken from Bolton’s. 
Further, Callahan testified that the purpose of the trip was to obtain anhydrous ammonia
to manufacture methamphetamine for use and sale. Lee, likewise, stated that the tank was
taken for the purpose of making methamphetamine. Lee also identified himself as a
methamphetamine cook and testified that, after the tank was taken back to Haslet, he
withdrew some of the anhydrous ammonia for the purpose of “cooking” some
methamphetamine. When this evidence is viewed in the light most favorable to the jury’s
verdict, we conclude that the jury was rationally justified in finding appellant guilty beyond
a reasonable doubt. Jackson, 443 U.S. at 319; Ross, 133 S.W.3d at 620. Accordingly,
appellant’s first issue, regarding the legal sufficiency of the evidence, is overruled.
Second Issue
          When reviewing all of the evidence in a neutral light, as we must in a factual
sufficiency review, we come to the same conclusion as above. Watson v. State, 204
S.W.3d at 415. Appellant contends that the State’s reliance on the uncorroborated
testimony of accomplice witnesses is the factor that most heavily weighs against the factual
sufficiency of the evidence. Sims, 99 S.W.3d at 603. However, we have already found
that the accomplice witnesses’ testimony was sufficiently corroborated. Therefore,
appellant’s issue number two, regarding the factual sufficiency of the evidence, is
overruled.
Evidentiary Rulings
          Appellant challenges four specific evidentiary rulings of the trial court. We will
address these as they appeared in appellant’s brief.
          As to each of appellant’s issues relating to the trial court’s admission of evidence,
the abuse of discretion standard applies. See Billodeau v. State, 277 S.W.3d 34, 39
(Tex.Crim.App. 2009). A reviewing court applying the abuse of discretion standard should
not reverse a trial judge’s decision whose ruling was within the zone of reasonable
disagreement. Green v. State, 934 S.W.2d 92, 102 (Tex.Crim.App. 1996). Additionally,
an appellate court will review the trial court’s ruling in light of what was before the trial court
at the time the ruling was made. Weatherred v. State, 15 S.W.3d 540, 542 (Tex.Crim.App.
2000). In the absence of findings of fact and conclusions of law, the trial judge's decision
will be sustained if it is correct on any theory of law applicable to the case. See State v.
Ross, 32 S.W.3d 853, 855-56 (Tex.Crim.App. 2000).
Third Issue
          In issue number three, appellant contends the trial court committed reversible error
by allowing Gillis to testify about the truck’s license plate number because her testimony
was hearsay. The testimony cited to the court deals with the license plate numbers of the
two vehicles, one of which was identified as pulling the ammonia tank in question. Initially,
we must determine whether or not Gillis’s testimony regarding the phone conversation was
hearsay. Hearsay is a statement, other than one made by the declarant while testifying at
the trial or hearing, offered in evidence to prove the truth of the matter asserted. See Tex.
R. Evid. 801(d).


 The testimony at issue reflects that Gillis received a phone call from
Waters about an ammonia tank Waters observed being pulled at a high rate of speed
down U.S. Highway 287. Waters believed something was amiss and called to advise the
owner, Bolton’s, what he had observed. Gillis took the information, contacted her
supervisor, and then contacted the police in Vernon. When she contacted the police, she
relayed the information to them, which included the license plate numbers. In essence,
Gillis’s testimony was to show what was said to Gillis and what she did with that
information. As such, we do not view the evidence as hearsay. See Guidry v. State, 9
S.W.3d 133, 152 (Tex.Crim.App. 1999) (citing Dinkins v. State, 894 S.W.2d 330, 347
(Tex.Crim.App. 1995)). Even though the trial court may have stated the wrong reason for
admitting the evidence, the trial court was nonetheless correct in admitting the same. 
Ross, 32 S.W.3d at 855-56. 
          However, even assuming that the evidence in question was hearsay, the error was
harmless. We review error of this nature under the guidance of non-constitutional error. 
See Tex. R. App. P. 44.2(b). Such an error will be disregarded unless it affected appellant’s
substantial rights. Id. A substantial right is affected when the error had a substantial and
injurious effect or influence in determining the jury’s verdict. See Walters v. State, 247
S.W.3d 204, 218 (Tex.Crim.App. 2007). As stated by the Texas Court of Criminal Appeals,
“If, when all is said and done, the conviction is sure that the error did not influence the jury,
or had but very slight effect, the verdict and the judgment should stand . . . .” Johnson v.
State, 43 S.W.3d 1, 4 (Tex.Crim.App. 2001). In this case, after our review of the total
record, as stated in our consideration of the sufficiency of the evidence, we can be sure
that the error, if indeed there was one, had no or very slight effect on the verdict of the jury. 
Therefore, any possible error was harmless. Appellant’s third issue is overruled.
Fourth Issue
          In issue number four, appellant contends that the trial court committed reversible
error when Gillis was allowed to testify that the substance removed from the tank in
question was anhydrous ammonia. The essence of appellant’s objection is that Gillis was
not competent to give such an expert opinion. The testimony in question is as follows:
Q. Do you know—Do you have personal knowledge of what that tank is used
for?
A. Yes.
Q. And what is it used for.
At that point in time, appellant’s trial counsel asked for a bench conference. During the
bench conference, trial counsel appeared to be objecting that the question called for expert
opinion testimony. After some discussion, trial counsel then requested permission to voir
dire the witness, apparently under the theory that she was giving expert opinion. The trial
court denied this request. Appellant’s trial counsel then restated his objection that the
question called for speculation and an expert opinion under rule 702. See Rule 702. Rule
702 deals with the testimony of experts, therefore, in order for the rule to apply to Gillis’s
testimony, it would have to have been offered as that of an expert. The record reflects that
Gillis had worked for Bolton’s for 16 years at the time of the trial. The record further
reflects that she was familiar with the business of Bolton’s. Thus, the question was based
upon her personal knowledge as a 16 year employee. Eventually, Gillis testified that the
tanks were used to store and move fertilizer and anhydrous ammonia. This was not
scientific, technical, or specialized knowledge that was being offered to assist the trier of
fact. See id. Rather, this was her testimony regarding her personal knowledge of Bolton’s
business. If the testimony was not simply based upon her observation of the business,
then it was, at most, a lay opinion based upon her 16 years experience with the company. 
See id. Appellant’s objection did not address this issue, nor does his brief on appeal. 
Accordingly, the trial court did not err in allowing Gillis to testify as to what the tanks were
used for.
Fifth Issue 
          In his fifth issue, appellant contends that the trial court committed reversible error
by denying him the right to conduct a voir dire examination of Gillis regarding her testimony
as to what the tanks were used for. Rule 705(b) provides that, before an expert gives his
opinion, the party against whom the opinion is offered has the right to conduct voir dire
examination of the witness to test the underlying facts or data that the opinion is based on. 
See Rule 705(b). Inasmuch as Gillis’s testimony was not offered as an expert, the trial
court did not err in overruling appellant’s request for voir dire examination of the witness
outside the presence of the jury. Accordingly, appellant’s fifth issue is overruled.
Sixth Issue
          By his sixth issue, appellant contends that the trial court committed reversible error
by allowing Lee to testify that he removed anhydrous ammonia from the tank in question. 
Appellant’s contention is that Lee’s testimony was offered as an expert and that Lee was
not qualified to offer such an opinion. The testimony in question was during the State’s
examination and was as follows:
Q. Do you know what the substance was when you took it out of that tank?
A. Anhydrous ammonia.
Q. And how is it that you knew that?
At this point, appellant’s trial counsel requested a bench conference during which he asked
to take the witness on voir dire examination out of the jury’s presence and further objected
that the question called on the witness to make a scientific conclusion. The voir dire
examination of the witness reveals that Lee only had one semester of college, had not
taken any chemistry classes, and had no specialized training in the area of chemistry. 
While Lee testified that he had received no specialized training in the identification,
application, and use of anhydrous ammonia, he did testify that he had cooked
methamphetamine hundreds of times and had used anhydrous ammonia in the process
approximately 98 percent of the time. Lee stated he was familiar with the way anhydrous
ammonia looks and smells. At the conclusion of the voir dire examination, appellant
objected to the testimony on the basis that Lee was not shown to be an expert, citing Rules
705(b) and 702. See Rule 702, 705(b). The trial court overruled the objection noting that
the witness was not being offered as an expert, but rather that his testimony was being
offered as a lay opinion based upon his experience of working with anhydrous ammonia.
          Initially, we observe that the record is devoid of anything that could be construed as
an offer of Lee as an expert witness. His testimony could only have been offered as a lay
opinion under Rule 701. See Rule 701. A witness may testify in the form of an opinion,
pursuant to rule 701, when the opinion is rationally based on his perceptions and is helpful
to a clear understanding of the testimony or the determination of a fact in issue. See
Osbourn v. State, 92 S.W.3d 531, 535 (Tex.Crim.App. 2002). Further, perception refers
to a witness’s interpretation of information acquired through his own senses or experiences
at the time of the event. Id. The record reflects that Lee actually withdrew the liquid from
the tank and, based upon his previous experience and his own sense of sight and smell,
knew the liquid to be anhydrous ammonia. Therefore, we find that the evidence was
admissible as a lay opinion. Id. Accordingly, appellant’s sixth issue is overruled.
Charge Error
          Appellant’s ninth and tenth issues allege errors by the trial court in the court’s
charge that was submitted to the jury. The trial court is required to give the jury “a written
charge distinctly setting forth the law applicable to the case; not expressing any opinion as
to the weight of the evidence, not summing up the testimony, discussing the facts or using
any argument in his charge calculated to arouse the sympathy or excite the passions of the
jury.” Art. 36.14. Error in a criminal jury charge is reviewed under art. 36.19. See art.
36.19. In analyzing a jury charge complaint, we first determine whether error exists in the
charge and, if so, whether sufficient harm resulted from the error to compel reversal. Ngo
v. State, 175 S.W.3d 738, 744 (Tex.Crim.App. 2005). Where an objection has been made, 
reversal is required if the error is “calculated to injure the rights of defendant.” Id.; Guevara
v. State, 152 S.W.3d 45, 54 (Tex.Crim.App. 2004); Almanza v. State, 686 S.W.2d 157, 171
(Tex.Crim.App. 1984). If a defendant does not object to the charge, reversal is required
only if the harm is so egregious the defendant has not had a fair and impartial trial. Ngo,
175 S.W.3d at 743-44.
          After the evidence during the guilt/innocence portion of the trial had closed, the trial
court conducted a charge conference with the attorneys outside of the presence of the jury. 
Appellant lodged two objections to the proposed charge. First, he objected to the inclusion
of the following instruction, which was the second paragraph of the court’s instructions
regarding criminal responsibility:
If, in the attempt to carry out a conspiracy to commit one felony, another
felony is committed by one of the conspirators, all conspirators are guilty of
the felony actually committed, though having no intent to commit it, if the
offense was committed in furtherance of the unlawful purpose and was one
that should have been anticipated as a result of carrying out the conspiracy.
 
Appellant’s stated objection was that there was no evidence from which to submit the
paragraph in question. The trial court overruled the objection without further comment. 
Appellant then objected to the inclusion, within the application paragraph, of the following
language, “acting alone or as a party . . . .” The trial court also overruled that objection. 
Ninth Issue
          The ninth issue concerns the portion of the charge regarding criminal responsibility. 
The law is well settled that, if the evidence raises an issue, the trial court should address
the issue in its charge. See art. 36.14. During the evidence on guilt/innocence, one of the
co-defendants, Callahan, testified that the group went to Vernon to steal anhydrous
ammonia. However, the other co-defendant, Lee, testified that the original purpose of the
trip was to sell methamphetamine. Lee also stated that, once it became apparent that the
parties to whom the group were to sell methamphetamine did not have the money to buy
any drugs, the plan to steal the ammonia tank was conceived. Therefore, the issue that
the contested portion of the charge addresses, that the conspiracy to commit one felony
resulted in the commission of another felony, is present within the evidence. Accordingly,
appellant’s contention that the same is not supported by the evidence is overruled. 
 
Tenth Issue 
          By issue ten, appellant contends that the trial court erred in the application portion
of the charge when the charge authorized appellant’s conviction whether he acted alone
or as a party to the offense. Appellant’s specific objection at the trial court was that the
inclusion of the phrase, acting alone or as a party, was not supported by the evidence and
was a comment on the weight of the evidence by the court. However, the evidence fully
supports the application of a parties charge. There were three individuals, including
appellant, charged with the offense in question. The evidence indicated that all three
participated in different portions of the transaction. As such, to omit the parties charge
would have been error. See art. 36.14; Gilmore v. State, 666 S.W.2d 136, 156
(Tex.App.–Amarillo 1983, pet. ref’d). Further, appellant’s issue is predicated on his
contention that there was insufficient corroboration of the accomplices’ testimony. Having
previously disposed of that issue adversely to appellant, we overrule issue ten.
Punishment Evidence
          Appellant’s final three issues deal with the punishment portion of the trial and center
around the trial court’s admission into evidence of matters regarding appellant’s
background and gang affiliation. We will address each in turn.
Issues Eleven and Twelve
          In appellant’s eleventh and twelfth issues, appellant contends that the trial court
committed reversible error in admitting evidence of extraneous offenses that are irrelevant
and unfairly prejudicial to appellant. Since the issues are concerned with the admission
of testimony by the trial court, the parties are referred to the standard of review set forth
in the portion of this opinion dealing with evidentiary issues during the guilt/innocence
phase of the trial. 
          The testimony in question was given by co-defendant Callahan and Gustavo
Vaquera, a security group coordinator with ID-TDCJ. Callahan testified regarding a letter
that she received from appellant while they were both in jail. The letter had previously
been admitted in a redacted format. During the punishment phase of the trial, the letter
was reintroduced without all of the redactions. The primary item that was formerly
redacted and was now before the jury was a swastika in the middle of the letter. 
Additionally, Callahan testified that appellant had advised her that he was a member of the
Aryan Brotherhood. Callahan stated that, when appellant referred to her as
“Featherwood,” the term meant that she was associated with gangs like the Aryan
Brotherhood and that she subscribed to their white supremacist philosophy. Callahan then
testified about the reputation of the Aryan Brotherhood and the types of activities that they
were involved in. 
          Gustavo Vaquera testified that he was a security group coordinator with the ID-TDCJ and, as such, was involved in supervising the collection of intelligence on the various
gangs that were located within the ID-TDCJ system. As a tool to identify inmates that are
members of one of the gangs within ID-TDCJ, Vaquera interviews inmates if there is
reason to think that the particular inmate might be a member of one of the gangs. One of
the purposes of these interviews is to see if the inmate will admit that he is a member of
one of the gangs. If the inmate does admit membership, then the inmate is asked to
execute a self-admit form saying they are a member of one of the security threat groups
within the ID-TDCJ system. Vaquera identified a document executed by appellant in 2005
as being one of these self-admit forms. In the document, appellant admitted that he was
a member of the Arian Circle gang. Vaquera further testified that the Arian Circle had been
identified as one of the threat groups within the prison system since the mid 1980's. The
swastika was identified by Vaquera as one of the symbols used by the Arian Circle. 
Vaquera stated that “featherwood” would be used to refer to a female member of the Arian
Circle. 
          Appellant objected to the proffered evidence on the basis of Rules 403 and 404. 
See Rule 403, 404. Further, appellant objected that the evidence was an attempt to
interject race prejudice into the punishment hearing by alleging appellant’s affiliation with
white supremacist gangs. See art. 37.07, § 3(a)(2). 
          Our analysis begins with article 37.07, § 3(a)(1), which provides that, during the
punishment phase of a trial, the State may offer evidence “as to any matter the court
deems relevant to sentencing.” See art. 37.07, § 3(a)(1). The term relevant, as used in
relation to the punishment phase of a trial, has been held to mean any evidence that is
helpful to a jury in determining the appropriate sentence for a particular defendant in a
particular case. See Ellison v. State, 201 S.W.3d 714, 719 (Tex.Crim.App. 2006). 
Therefore, admissibility of evidence during the punishment phase of a non-capital criminal
case has been held to be a function of policy rather than a question of logical relevance. 
Id. (citing Sunbury v. State, 88 S.W.3d 229, 233 (Tex.Crim.App. 2002)). Article 37.07, §
3(a)(1), further provides that the following types of evidence are admissible: 1) the prior
criminal record of the defendant; 2) the defendant’s general reputation; 3) the defendant’s
general character; 4) an opinion regarding the defendant’s character; 5) the circumstances
of the offense being tried; and 6) notwithstanding Texas Rules of Evidence 404 and 405,
any other evidence of an extraneous crime or bad act that is shown beyond a reasonable
doubt by evidence to have been committed by the defendant or for which the defendant
has previously been charged with or finally convicted of the crime or act. See art. 37.07,
§ 3(a)(1). 
          However, relevant evidence may be excluded if its probative value is substantially
outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury,
considerations of undue delay, or needless presentation of cumulative evidence. See Rule
403. An analysis of the Rule 403 considerations includes: 1) the probative value of the
evidence; 2) the potential of the evidence to impress the jury in some irrational, but
nevertheless indelible, way; 3) the time the proponent needs to develop the evidence; and
4) the proponent’s need for the evidence. See Rodriguez v. State, 203 S.W.3d 837, 843
(Tex.Crim.App. 2006). 
          In the case at bar, the presentation of the evidence took only a short time. The
probative value of the evidence should be considered high. Appellant’s prior admission of
his affiliation with a prison gang and the reputation of that gang for commission of offenses,
both inside prison and in the general community, was a factor that the jury was entitled to
consider in determining appellant’s propensity for further criminal activity should he be
released from incarceration. The evidence, when considered with the evidence of prior
convictions, had very little potential to impress the jury in some irrational manner. While
the record does contain proof of six other final convictions and, therefore, the State’s need
for this testimony was not great, we cannot say that the admission of the testimony was an
abuse of discretion by the trial court. Billodeau, 277 S.W.3d at 39. 
          Appellant also objected on the basis of article 37.07, § 3(a)(2), which states that
evidence may not be offered by the State to establish that appellant’s race or ethnicity
makes it likely that he will engage in future criminal conduct. See art. 37.07, § 3(a)(2). 
Appellant’s race was never discussed; rather, his affiliation with prison gangs was
discussed. Had appellant associated himself with some other prison gang, the evidence
would have been admissible for the same reasons. Further, appellant contends that, in
the State’s final argument, it made a plea for the jury to consider this evidence in the exact
manner prohibited by the statute. We have read the alleged offending argument and
appellant’s race was not the point; rather, his gang affiliation was the point. The argument
was aimed directly at who appellant associated with and those individuals’ reputations. 
The trial court did not abuse its discretion in admitting the evidence. 
          Having considered appellant’s issues eleven and twelve and determining that the
trial court did not abuse its discretion, we overrule both issues.
Issue Thirteen
          Appellant’s final issue contends that the testimony of Vaquera, regarding appellant’s
admission about gang membership, was inadmissible as statements made during a
custodial interrogation without the requisite warnings contained in article 38.22. See art.
38.22. Vaquera testified that ID-TDCJ maintains a program of trying to identify whether or
not a new inmate has gang affiliations. The process consists of observation of the inmate
to determine if contact is made with known gang members and interviews of inmates to see
if the inmate will admit gang membership. According to the records that Vaquera received,
appellant was interviewed in 2005 at the Hughes Unit of the ID-TDCJ and, during the
interview, admitted that he was a member of the Arian Circle. Further, Vaquera testified
that the purpose of the interview is to properly segregate those inmates with gang
affiliations for the inmate’s safety. According to Vaquera, the ID-TDCJ does not punish an
inmate for admitting gang affiliation, rather the information is used for inmate and
institutional security purposes.
          Article 38.22 applies only to custodial interrogation. See Dowthitt v. State, 931
S.W.2d 244, 263 (Tex.Crim.App. 1996). Custodial interrogation occurs when a defendant
is in custody and is exposed to any words or actions on the part of the police that the police
should know are reasonably likely to elicit an incriminating statement. See Roquemore v.
State, 60 S.W.3d 862, 868 (Tex.Crim.App. 2001). However, questions asked post-arrest
of an jail inmate for administrative purposes, such as classification, do not constitute
interrogation. See Cross v. State, 144 S.W.3d 521, 525 n.5 (Tex.Crim.App. 2004). 
Specifically, in a 2007 unpublished opinion, the Texas Court of Criminal Appeals held that
questions regarding gang affiliation, which were part of the normal booking procedure and
necessary for the safety of the inmates and employees, did not constitute interrogation. 
See Ramirez v. State, AP-75,167, 2007 Tex.Crim.App.Unpub. LEXIS 610, at *46
(Tex.Crim.App. Dec. 12, 2007), cert. denied, 2008 U.S. LEXIS 6443 (Oct. 6, 2008). The
Waco Court of Appeals held the same in Pierce v. State, 234 S.W.3d 265, 271-72
(Tex.App.–Waco 2007, pet. ref’d). The only distinguishing feature in these cases and the
one before the court is that the cited cases involved booking at a county jail as opposed
to classification issues within ID-TDCJ. However, the purpose of the questions regarding
gang affiliation is the same, security for the inmate and the facility. We see no reason to
create a new rule because one occurs in a local facility and another in the state system. 
We find that the questions regarding appellant’s gang affiliation were not custodial
interrogation for purposes of art. 38.22. See Ramirez, 2007 Tex.Crim.App.Unpub. LEXIS
610, at *46; Cross, 144 S.W.3d at 525 n.5; Pierce 234 S.W.3d at 271-72. Therefore,
appellant’s thirteenth issue is overruled.
Conclusion
          Having overruled all of appellant’s issues, we affirm the judgment of the trial court.
 
                                                                Mackey K. Hancock

                                                                        Justice





Do not publish.