NO. 07-08-0209-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

OCTOBER 16, 2009
_____

JOHN DAVID MEIER, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_____

FROM THE 46TH DISTRICT COURT OF WILBARGER COUNTY;

NO. 11,063; HONORABLE DAN MIKE BIRD, JUDGE
_____

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant, John David Meier, appeals his conviction for possession of anhydrous ammonia with intent to unlawfully manufacture a controlled substance, methamphetamine.[1] After finding appellant guilty of the indicted offense, the jury found both enhancement allegations contained in the indictment true and sentenced appellant to confinement for life in the Institutional Division of the Texas Department of Criminal Justice (ID-TDCJ).

_____

[1] See TEX. HEALTH & SAFETY CODE ANN. § 481.124 (Vernon Supp. 2009).

Appellant appeals the judgment of the trial court by 13 issues.  Disagreeing with appellant, we affirm the judgment of the trial court.

Factual and Procedural Background

On November 9, 2007, Ronnie Earl Waters was driving to breakfast on U.S. Highway 287 outside Wichita Falls, Texas, when two pickups passed him at a high rate of speed.  One of the pickups was pulling an anhydrous ammonia tank that bore the name of Wilbarger Elevators No. 28.  Because of the speed of travel, the foggy weather conditions, and the time of the year, Waters felt that there was something not right about what he saw.  As a result, Waters took down the license plate number of each pickup and, after finishing his breakfast, telephoned Bolton's Crown Quality (Bolton's) in Vernon, Texas, to report what he had seen.[2]  Waters's telephone call was answered by Rosalind Gillis, who was the bookkeeper at Bolton's.  Gillis testified that the license plate numbers of the two pickups given to her by Waters were 6AXTV6 and 56R653.  Gillis then contacted the general manager of Bolton's who advised her to contact the Vernon Police Department.  Gillis then passed the information along to the police.  Gillis testified that the trailer in question was used to hold anhydrous ammonia.

The Vernon police responded to the call from Bolton's regarding a stolen anhydrous ammonia tank.  The record indicates that, during the investigation, Wendell Smith, a sergeant with the Vernon police, contacted Taylor's Truck Stop in Vernon to look at their

---

[2] There was no direct testimony about the connection between the name "Wilbarger Elevators" and "Bolton's Crown Quality."

2

surveillance tapes for the day in question. Smith reviewed the surveillance video and had a copy of the video for the day in question made. Steve Miller, the district manager for Taylor's, testified about the surveillance system at the Vernon truck stop. He identified the DVD that had been downloaded for Smith. The DVD was admitted into evidence and, subsequently, played for the jury.

Casey Callahan, a co-defendant, testified about the purpose for the trip to Vernon and the events that transpired on November 9, 2007. The group drove to Vernon from Haslet, Texas, which is near Fort Worth, to steal anhydrous ammonia in order to "cook" methamphetamine to sell. The group consisted of Callahan, appellant, David Lee, Leslie Knight and a female with the first name of Jessica. The group arrived in Vernon in Callahan's pickup truck, a Dodge 4x4, and appellant's red pickup truck. Prior to the actual theft, the participants met up at the Taylor Truck Stop in Vernon to get gas. The surveillance tape was played for the jury and Callahan identified all of the participants, including appellant. Callahan and Jessica stayed at Taylor's while appellant and the other male participants went to "scout out the anhydrous tank location," which was very close to the Taylor's location. After the ammonia tank was taken, the group eventually headed back toward the Fort Worth area traveling down U.S. Highway 287. On the return trip, the ammonia tank was pulled by appellant's red pickup and Callahan's white pickup was in the rear of the convoy. The tank was taken to a location near Lee's home in Haslet. Callahan admitted that she was arrested for the same offense that appellant was charged with and entered a plea of guilty. Callahan received a five year probated sentence. Callahan was then asked to identify a letter she received from appellant while she was in jail. She was

3

able to identify the letter as being written by appellant from appellant's handwriting. After a portion of the letter was redacted, the letter was read to the jury. Callahan was asked what the letter meant to her and she stated that her understanding of the letter was that appellant was requesting her to corroborate appellant's story.

Lee, another co-defendant, testified that, at the time of the taking of the anhydrous tank, he lived in Haslet, Texas. Lee admitted that he had "cooked" methamphetamine hundreds of times and that, approximately 98 percent of the time, he used anhydrous ammonia in the process. Lee stated that the purpose of taking the anhydrous was to "cook" methamphetamine to use and sell. After the tank was parked near his home, Lee stated he had returned to the tank and took liquid from it. He stated the liquid he took from the tank was anhydrous ammonia. Lee admitted that he had pleaded guilty to the offense appellant was on trial for and received a sentence of 10 years incarceration in the ID-TDCJ.

As the Vernon police continued their investigation, Officer Mickey Allen took a statement from Rosalind Gillis that identified the license plate numbers Gillis had written down. Initially, Allen ran a check on license plate number 56R653, but that check came back as an invalid license plate number. The sixes in the number were changed to Gs, so that the tag read 5GRG53, and another attempt to verify the registration resulted in the license plate number, as submitted, being registered to Ann Meier of Weatherford, Texas. Appellant's booking sheet at the Wilbarger jail listed appellant's home address as 7338 Hopi Trail, Weatherford, Texas, and Ann Meier of 7338 Hopi Trail, Weatherford, Texas,

4

was listed as his emergency contact. The license on the other vehicle spotted following the ammonia tank was shown to be registered to Casey Callahan and Clinton Pullin.[3]

The record showed that the anhydrous ammonia tank was found about one and a half miles from Lee's home near Haslet. The record further shows that the tank in question was used exclusively to store and transport anhydrous ammonia. After the tank was returned to Bolton's, it was determined that approximately 260 pounds of anhydrous ammonia had been removed from the tank.

After the close of evidence but prior to the charge being read to the jury, appellant objected to the charge on two grounds. First, appellant objected to the inclusion of a paragraph regarding responsibility for actions of conspirators occurring during a conspiracy. Second, appellant objected to the application portion of the charge that allowed appellant to be convicted as the primary actor or as a party. The trial court overruled both objections.

During the punishment portion of the trial, evidence was offered regarding appellant's prior convictions. Additionally, evidence was received regarding appellant's gang affiliation with either the Arian Circle or the Aryan Brotherhood. After all the punishment evidence, appellant was sentenced to confinement for life in the ID-TDCJ.

Appellant has appealed via 13 issues. Appellant's issues are concerning: 1) the legal and factual sufficiency of the evidence; 2) the sufficiency of the corroboration of

---

[3] The record revealed that Clinton Pullin was Casey Callahan's former husband.

accomplice witness testimony; 3) evidentiary objections during the guilt/innocence portion of the trial; 4) charge objections; and 5) evidentiary objections during the punishment portion of the trial. We disagree with appellant's contentions and will affirm the judgment of the trial court.

We will first address appellant's contention that there was insufficient corroboration of the accomplice witness testimony.

Accomplice Witness Testimony

By issue number seven, appellant alleges that the testimony of Casey Callahan and David Lee was uncorroborated accomplice witness testimony and was not admissible. By issue number eight, appellant contends that the trial court erred in denying his motion for directed verdict based upon the lack of corroboration of Callahan's and Lee's testimony. That Callahan and Lee were accomplices was very apparent. Each had been charged with the same offense for which appellant was standing trial. The trial court instructed that they were accomplices in the court's charge. The court also instructed the jury about the need to corroborate accomplice testimony, pursuant to the Texas Code of Criminal Procedure. See Tex. Code Crim. Proc. Ann. art. 38.14 (Vernon 2005).[4] Appellant's seventh and eighth issues boil down to a single issue, whether there was or was not sufficient corroboration of the testimony of the accomplice witnesses.

---

[4] Further reference to the Texas Code of Criminal Procedure will be by reference to "Art. ___" or "art. ___."

6

The standard by which we review the corroboration of accomplice witness testimony requires that the reviewing court eliminate all of the accomplice testimony from consideration and then examines the remaining portions of the record to see if there is any evidence that tends to connect appellant to the commission of the crime. Castillo v. State, 221 S.W.3d 689, 691 (Tex.Crim.App. 2007) (citing Solomon v. State, 49 S.W.3d 356, 361 (Tex.Crim.App. 2001)). The corroborating evidence does not need to be sufficient to establish appellant's guilt, rather it needs only tend to connect appellant to the offense. Id. There simply must be some non-accomplice evidence which tends to connect appellant to the commission of the offense alleged in the indictment. Id. However, the mere presence of appellant at the scene of the crime is insufficient corroboration. See Malone v. State, 253 S.W.3d 253, 257 (Tex.Crim.App. 2008).

In the present case, the evidence offered to corroborate the accomplices' testimony begins with Waters's observation of the red pickup truck pulling the ammonia tank. Waters's report of the license plate numbers of the trucks led to the discovery that one of the trucks was registered to Ann Meier, who lived at the same address that appellant gave as his home address on the booking sheet. There is also the surveillance video that was played for the jury. Not only did the jury see the video during the trial, the record reveals that the jury requested that the video be shown to them during deliberations. Finally, there is the letter, identified as written by appellant, imploring Callahan to meet with appellant to get their stories straight. The jury also had this evidence for review in their deliberations. In short, we believe this evidence tends to connect appellant with the offense. To the extent that appellant's other contention regarding the motion for directed verdict is directed

to the sufficiency of the corroboration of the accomplice witnesses' testimony, the Texas Court of Criminal Appeals has determined that, in reviewing the sufficiency of corroboration, you do not superimpose the test for legal sufficiency on top of the accomplice witness rule.  See Solomon, 49 S.W.3d at 362; Cathey v. State, 992 S.W.2d 460, 462-63 (Tex.Crim.App. 1999).  Accordingly, appellant's seventh and eighth issues are overruled.

## Legal and Factual Sufficiency

By issues number one and two, appellant contends that the evidence was legally and factually insufficient to prove that he possessed anhydrous ammonia with intent to unlawfully manufacture methamphetamine.  Because appellant challenges both legal and factual sufficiency, we are required to conduct an analysis of the legal sufficiency of the evidence first and then, only if we find the evidence to be legally sufficient, do we analyze the factual sufficiency of the evidence.  See Clewis v. State, 922 S.W.2d 126, 133 (Tex.Crim.App. 1996).

In assessing the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Ross v. State, 133 S.W.3d 618, 620 (Tex.Crim.App. 2004).  In conducting a legal sufficiency review, an appellate court may not sit as a thirteenth juror, but rather must uphold the jury's verdict unless it is irrational or unsupported by more than a mere modicum of evidence.  Moreno

8

v. State, 755 S.W.2d 866, 867 (Tex.Crim.App. 1988). We measure the legal sufficiency of the evidence against a hypothetically correct jury charge. See Malik v. State, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997).

When an appellant challenges the factual sufficiency of the evidence supporting his conviction, the reviewing court must determine whether, considering all the evidence in a neutral light, the jury was rationally justified in finding the appellant guilty beyond a reasonable doubt. See Watson v. State, 204 S.W.3d 404, 415 (Tex.Crim.App. 2006). In performing a factual sufficiency review, we must give deference to the fact finder's determinations if supported by evidence and may not order a new trial simply because we may disagree with the verdict. See id. at 417. As an appellate court, we are not justified in ordering a new trial unless there is some objective basis in the record demonstrating that the great weight and preponderance of the evidence contradicts the jury's verdict. See id. Additionally, an appellate opinion addressing factual sufficiency must include a discussion of the most important evidence that appellant claims undermines the jury's verdict. Sims v. State, 99 S.W.3d 600, 603 (Tex.Crim.App. 2003). The Court of Criminal Appeals has recently declared that, when reviewing the evidence for factual sufficiency, the reviewing court should measure the evidence in a neutral manner against a "hypothetically correct" jury charge. Garza Vega v. State, 267 S.W.3d 912, 915 (Tex.Crim.App. 2008) (citing Wooley v. State, 273 S.W.3d 260, 268 (Tex.Crim.App. 2008)).

First Issue

Turning to the issue of the legal sufficiency of the evidence to prove that appellant possessed anhydrous ammonia with intent to unlawfully manufacture a controlled substance, methamphetamine, we first look at the testimony of Waters. Waters described an anhydrous ammonia tank going down U.S. Highway 287 at a high rate of speed being pulled by a red pickup truck. Gillis stated that the only thing the tanks were used for was the storage and movement of anhydrous ammonia. Further, Robert Ferguson, the general manager of Bolton's, testified that the only purpose for the tanks, like the one stolen, is the storage and movement of anhydrous ammonia. Additionally, the testimony of the investigating officers was that the pickup pulling the ammonia tank was registered to Ann Meier, who resided at 7338 Hopi Trail, Weatherford, Texas. This is the name and address appellant furnished the jail for his emergency contact on his jail booking sheet. Appellant also listed his address as 7338 Hopi Trail in Weatherford, Texas. Callahan identified appellant on the surveillance video from the Taylor's Truck Stop in Vernon as one of the group that entered the truck stop around midnight before the tank was taken from Bolton's. Further, Callahan testified that the purpose of the trip was to obtain anhydrous ammonia to manufacture methamphetamine for use and sale. Lee, likewise, stated that the tank was taken for the purpose of making methamphetamine. Lee also identified himself as a methamphetamine cook and testified that, after the tank was taken back to Haslet, he withdrew some of the anhydrous ammonia for the purpose of "cooking" some methamphetamine. When this evidence is viewed in the light most favorable to the jury's verdict, we conclude that the jury was rationally justified in finding appellant guilty beyond

10

a reasonable doubt. Jackson, 443 U.S. at 319; Ross, 133 S.W.3d at 620. Accordingly, appellant's first issue, regarding the legal sufficiency of the evidence, is overruled.

Second Issue

When reviewing all of the evidence in a neutral light, as we must in a factual sufficiency review, we come to the same conclusion as above. Watson v. State, 204 S.W.3d at 415. Appellant contends that the State's reliance on the uncorroborated testimony of accomplice witnesses is the factor that most heavily weighs against the factual sufficiency of the evidence. Sims, 99 S.W.3d at 603. However, we have already found that the accomplice witnesses' testimony was sufficiently corroborated. Therefore, appellant's issue number two, regarding the factual sufficiency of the evidence, is overruled.

Evidentiary Rulings

Appellant challenges four specific evidentiary rulings of the trial court. We will address these as they appeared in appellant's brief.

As to each of appellant's issues relating to the trial court's admission of evidence, the abuse of discretion standard applies. See Billodeau v. State, 277 S.W.3d 34, 39 (Tex.Crim.App. 2009). A reviewing court applying the abuse of discretion standard should not reverse a trial judge's decision whose ruling was within the zone of reasonable disagreement. Green v. State, 934 S.W.2d 92, 102 (Tex.Crim.App. 1996). Additionally, an appellate court will review the trial court's ruling in light of what was before the trial court

11

at the time the ruling was made. <u>Weatherred v. State</u>, 15 S.W.3d 540, 542 (Tex.Crim.App. 2000). In the absence of findings of fact and conclusions of law, the trial judge's decision will be sustained if it is correct on any theory of law applicable to the case. See <u>State v. Ross</u>, 32 S.W.3d 853, 855-56 (Tex.Crim.App. 2000).

<u>Third Issue</u>

In issue number three, appellant contends the trial court committed reversible error by allowing Gillis to testify about the truck's license plate number because her testimony was hearsay. The testimony cited to the court deals with the license plate numbers of the two vehicles, one of which was identified as pulling the ammonia tank in question. Initially, we must determine whether or not Gillis's testimony regarding the phone conversation was hearsay. Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. See TEX. R. EVID. 801(d).[5] The testimony at issue reflects that Gillis received a phone call from Waters about an ammonia tank Waters observed being pulled at a high rate of speed down U.S. Highway 287. Waters believed something was amiss and called to advise the owner, Bolton's, what he had observed. Gillis took the information, contacted her supervisor, and then contacted the police in Vernon. When she contacted the police, she relayed the information to them, which included the license plate numbers. In essence, Gillis's testimony was to show what was said to Gillis and what she did with that information. As such, we do not view the evidence as hearsay. See <u>Guidry v. State</u>, 9

---

[5] Further reference to the Texas Rules of Evidence will be by reference to "Rule ___" or "rule ____."

S.W.3d 133, 152 (Tex.Crim.App. 1999) (citing Dinkins v. State, 894 S.W.2d 330, 347 (Tex.Crim.App. 1995)). Even though the trial court may have stated the wrong reason for admitting the evidence, the trial court was nonetheless correct in admitting the same. Ross, 32 S.W.3d at 855-56.

However, even assuming that the evidence in question was hearsay, the error was harmless. We review error of this nature under the guidance of non-constitutional error. See TEX. R. APP. P. 44.2(b). Such an error will be disregarded unless it affected appellant's substantial rights. Id. A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. See Walters v. State, 247 S.W.3d 204, 218 (Tex.Crim.App. 2007). As stated by the Texas Court of Criminal Appeals, "If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand . . . ." Johnson v. State, 43 S.W.3d 1, 4 (Tex.Crim.App. 2001). In this case, after our review of the total record, as stated in our consideration of the sufficiency of the evidence, we can be sure that the error, if indeed there was one, had no or very slight effect on the verdict of the jury. Therefore, any possible error was harmless. Appellant's third issue is overruled.

Fourth Issue

In issue number four, appellant contends that the trial court committed reversible error when Gillis was allowed to testify that the substance removed from the tank in question was anhydrous ammonia. The essence of appellant's objection is that Gillis was not competent to give such an expert opinion. The testimony in question is as follows:

13

Q. Do you know—Do you have personal knowledge of what that tank is used for?

A. Yes.

Q. And what is it used for.

At that point in time, appellant's trial counsel asked for a bench conference. During the bench conference, trial counsel appeared to be objecting that the question called for expert opinion testimony. After some discussion, trial counsel then requested permission to voir dire the witness, apparently under the theory that she was giving expert opinion. The trial court denied this request. Appellant's trial counsel then restated his objection that the question called for speculation and an expert opinion under rule 702. See Rule 702. Rule 702 deals with the testimony of experts, therefore, in order for the rule to apply to Gillis's testimony, it would have to have been offered as that of an expert. The record reflects that Gillis had worked for Bolton's for 16 years at the time of the trial. The record further reflects that she was familiar with the business of Bolton's. Thus, the question was based upon her personal knowledge as a 16 year employee. Eventually, Gillis testified that the tanks were used to store and move fertilizer and anhydrous ammonia. This was not scientific, technical, or specialized knowledge that was being offered to assist the trier of fact. See id. Rather, this was her testimony regarding her personal knowledge of Bolton's business. If the testimony was not simply based upon her observation of the business, then it was, at most, a lay opinion based upon her 16 years experience with the company. See id. Appellant's objection did not address this issue, nor does his brief on appeal. Accordingly, the trial court did not err in allowing Gillis to testify as to what the tanks were used for.

14

Fifth Issue

In his fifth issue, appellant contends that the trial court committed reversible error by denying him the right to conduct a voir dire examination of Gillis regarding her testimony as to what the tanks were used for. Rule 705(b) provides that, before an expert gives his opinion, the party against whom the opinion is offered has the right to conduct voir dire examination of the witness to test the underlying facts or data that the opinion is based on. See Rule 705(b). Inasmuch as Gillis's testimony was not offered as an expert, the trial court did not err in overruling appellant's request for voir dire examination of the witness outside the presence of the jury. Accordingly, appellant's fifth issue is overruled.

Sixth Issue

By his sixth issue, appellant contends that the trial court committed reversible error by allowing Lee to testify that he removed anhydrous ammonia from the tank in question. Appellant's contention is that Lee's testimony was offered as an expert and that Lee was not qualified to offer such an opinion. The testimony in question was during the State's examination and was as follows:

> Q. Do you know what the substance was when you took it out of that tank?
> A. Anhydrous ammonia.
> Q. And how is it that you knew that?

At this point, appellant's trial counsel requested a bench conference during which he asked to take the witness on voir dire examination out of the jury's presence and further objected that the question called on the witness to make a scientific conclusion. The voir dire

15

examination of the witness reveals that Lee only had one semester of college, had not taken any chemistry classes, and had no specialized training in the area of chemistry. While Lee testified that he had received no specialized training in the identification, application, and use of anhydrous ammonia, he did testify that he had cooked methamphetamine hundreds of times and had used anhydrous ammonia in the process approximately 98 percent of the time. Lee stated he was familiar with the way anhydrous ammonia looks and smells. At the conclusion of the voir dire examination, appellant objected to the testimony on the basis that Lee was not shown to be an expert, citing Rules 705(b) and 702. See Rule 702, 705(b). The trial court overruled the objection noting that the witness was not being offered as an expert, but rather that his testimony was being offered as a lay opinion based upon his experience of working with anhydrous ammonia.

Initially, we observe that the record is devoid of anything that could be construed as an offer of Lee as an expert witness. His testimony could only have been offered as a lay opinion under Rule 701. See Rule 701. A witness may testify in the form of an opinion, pursuant to rule 701, when the opinion is rationally based on his perceptions and is helpful to a clear understanding of the testimony or the determination of a fact in issue. See Osbourn v. State, 92 S.W.3d 531, 535 (Tex.Crim.App. 2002). Further, perception refers to a witness's interpretation of information acquired through his own senses or experiences at the time of the event. Id. The record reflects that Lee actually withdrew the liquid from the tank and, based upon his previous experience and his own sense of sight and smell, knew the liquid to be anhydrous ammonia. Therefore, we find that the evidence was admissible as a lay opinion. Id. Accordingly, appellant's sixth issue is overruled.

16

Charge Error

Appellant's ninth and tenth issues allege errors by the trial court in the court's charge that was submitted to the jury. The trial court is required to give the jury "a written charge distinctly setting forth the law applicable to the case; not expressing any opinion as to the weight of the evidence, not summing up the testimony, discussing the facts or using any argument in his charge calculated to arouse the sympathy or excite the passions of the jury." Art. 36.14. Error in a criminal jury charge is reviewed under art. 36.19. See art. 36.19. In analyzing a jury charge complaint, we first determine whether error exists in the charge and, if so, whether sufficient harm resulted from the error to compel reversal. Ngo v. State, 175 S.W.3d 738, 744 (Tex.Crim.App. 2005). Where an objection has been made, reversal is required if the error is "calculated to injure the rights of defendant." Id.; Guevara v. State, 152 S.W.3d 45, 54 (Tex.Crim.App. 2004); Almanza v. State, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984). If a defendant does not object to the charge, reversal is required only if the harm is so egregious the defendant has not had a fair and impartial trial. Ngo, 175 S.W.3d at 743-44.

After the evidence during the guilt/innocence portion of the trial had closed, the trial court conducted a charge conference with the attorneys outside of the presence of the jury. Appellant lodged two objections to the proposed charge. First, he objected to the inclusion of the following instruction, which was the second paragraph of the court's instructions regarding criminal responsibility:

17

> If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of carrying out the conspiracy.

Appellant's stated objection was that there was no evidence from which to submit the paragraph in question. The trial court overruled the objection without further comment. Appellant then objected to the inclusion, within the application paragraph, of the following language, "acting alone or as a party . . . ." The trial court also overruled that objection.

Ninth Issue

The ninth issue concerns the portion of the charge regarding criminal responsibility. The law is well settled that, if the evidence raises an issue, the trial court should address the issue in its charge. See art. 36.14. During the evidence on guilt/innocence, one of the co-defendants, Callahan, testified that the group went to Vernon to steal anhydrous ammonia. However, the other co-defendant, Lee, testified that the original purpose of the trip was to sell methamphetamine. Lee also stated that, once it became apparent that the parties to whom the group were to sell methamphetamine did not have the money to buy any drugs, the plan to steal the ammonia tank was conceived. Therefore, the issue that the contested portion of the charge addresses, that the conspiracy to commit one felony resulted in the commission of another felony, is present within the evidence. Accordingly, appellant's contention that the same is not supported by the evidence is overruled.

18

<u>Tenth Issue</u>

By issue ten, appellant contends that the trial court erred in the application portion of the charge when the charge authorized appellant's conviction whether he acted alone or as a party to the offense. Appellant's specific objection at the trial court was that the inclusion of the phrase, acting alone or as a party, was not supported by the evidence and was a comment on the weight of the evidence by the court. However, the evidence fully supports the application of a parties charge. There were three individuals, including appellant, charged with the offense in question. The evidence indicated that all three participated in different portions of the transaction. As such, to omit the parties charge would have been error. <u>See</u> art. 36.14; <u>Gilmore v. State</u>, 666 S.W.2d 136, 156 (Tex.App.–Amarillo 1983, pet. ref'd). Further, appellant's issue is predicated on his contention that there was insufficient corroboration of the accomplices' testimony. Having previously disposed of that issue adversely to appellant, we overrule issue ten.

Punishment Evidence

Appellant's final three issues deal with the punishment portion of the trial and center around the trial court's admission into evidence of matters regarding appellant's background and gang affiliation. We will address each in turn.

<u>Issues Eleven and Twelve</u>

In appellant's eleventh and twelfth issues, appellant contends that the trial court committed reversible error in admitting evidence of extraneous offenses that are irrelevant

and unfairly prejudicial to appellant. Since the issues are concerned with the admission of testimony by the trial court, the parties are referred to the standard of review set forth in the portion of this opinion dealing with evidentiary issues during the guilt/innocence phase of the trial.

The testimony in question was given by co-defendant Callahan and Gustavo Vaquera, a security group coordinator with ID-TDCJ. Callahan testified regarding a letter that she received from appellant while they were both in jail. The letter had previously been admitted in a redacted format. During the punishment phase of the trial, the letter was reintroduced without all of the redactions. The primary item that was formerly redacted and was now before the jury was a swastika in the middle of the letter. Additionally, Callahan testified that appellant had advised her that he was a member of the Aryan Brotherhood. Callahan stated that, when appellant referred to her as "Featherwood," the term meant that she was associated with gangs like the Aryan Brotherhood and that she subscribed to their white supremacist philosophy. Callahan then testified about the reputation of the Aryan Brotherhood and the types of activities that they were involved in.

Gustavo Vaquera testified that he was a security group coordinator with the ID-TDCJ and, as such, was involved in supervising the collection of intelligence on the various gangs that were located within the ID-TDCJ system. As a tool to identify inmates that are members of one of the gangs within ID-TDCJ, Vaquera interviews inmates if there is reason to think that the particular inmate might be a member of one of the gangs. One of the purposes of these interviews is to see if the inmate will admit that he is a member of

20

one of the gangs. If the inmate does admit membership, then the inmate is asked to execute a self-admit form saying they are a member of one of the security threat groups within the ID-TDCJ system. Vaquera identified a document executed by appellant in 2005 as being one of these self-admit forms. In the document, appellant admitted that he was a member of the Arian Circle gang. Vaquera further testified that the Arian Circle had been identified as one of the threat groups within the prison system since the mid 1980's. The swastika was identified by Vaquera as one of the symbols used by the Arian Circle. Vaquera stated that "featherwood" would be used to refer to a female member of the Arian Circle.

Appellant objected to the proffered evidence on the basis of Rules 403 and 404. See Rule 403, 404. Further, appellant objected that the evidence was an attempt to interject race prejudice into the punishment hearing by alleging appellant's affiliation with white supremacist gangs. See art. 37.07, § 3(a)(2).

Our analysis begins with article 37.07, § 3(a)(1), which provides that, during the punishment phase of a trial, the State may offer evidence "as to any matter the court deems relevant to sentencing." See art. 37.07, § 3(a)(1). The term relevant, as used in relation to the punishment phase of a trial, has been held to mean any evidence that is helpful to a jury in determining the appropriate sentence for a particular defendant in a particular case. See Ellison v. State, 201 S.W.3d 714, 719 (Tex.Crim.App. 2006). Therefore, admissibility of evidence during the punishment phase of a non-capital criminal case has been held to be a function of policy rather than a question of logical relevance. Id. (citing Sunbury v. State, 88 S.W.3d 229, 233 (Tex.Crim.App. 2002)). Article 37.07, §

21

3(a)(1), further provides that the following types of evidence are admissible: 1) the prior criminal record of the defendant; 2) the defendant's general reputation; 3) the defendant's general character; 4) an opinion regarding the defendant's character; 5) the circumstances of the offense being tried; and 6) notwithstanding Texas Rules of Evidence 404 and 405, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which the defendant has previously been charged with or finally convicted of the crime or act. See art. 37.07, § 3(a)(1).

However, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, considerations of undue delay, or needless presentation of cumulative evidence. See Rule 403. An analysis of the Rule 403 considerations includes: 1) the probative value of the evidence; 2) the potential of the evidence to impress the jury in some irrational, but nevertheless indelible, way; 3) the time the proponent needs to develop the evidence; and 4) the proponent's need for the evidence. See Rodriguez v. State, 203 S.W.3d 837, 843 (Tex.Crim.App. 2006).

In the case at bar, the presentation of the evidence took only a short time. The probative value of the evidence should be considered high. Appellant's prior admission of his affiliation with a prison gang and the reputation of that gang for commission of offenses, both inside prison and in the general community, was a factor that the jury was entitled to consider in determining appellant's propensity for further criminal activity should he be released from incarceration. The evidence, when considered with the evidence of prior

22

convictions, had very little potential to impress the jury in some irrational manner. While the record does contain proof of six other final convictions and, therefore, the State's need for this testimony was not great, we cannot say that the admission of the testimony was an abuse of discretion by the trial court. Billodeau, 277 S.W.3d at 39.

Appellant also objected on the basis of article 37.07, § 3(a)(2), which states that evidence may not be offered by the State to establish that appellant's race or ethnicity makes it likely that he will engage in future criminal conduct. See art. 37.07, § 3(a)(2). Appellant's race was never discussed; rather, his affiliation with prison gangs was discussed. Had appellant associated himself with some other prison gang, the evidence would have been admissible for the same reasons. Further, appellant contends that, in the State's final argument, it made a plea for the jury to consider this evidence in the exact manner prohibited by the statute. We have read the alleged offending argument and appellant's race was not the point; rather, his gang affiliation was the point. The argument was aimed directly at who appellant associated with and those individuals' reputations. The trial court did not abuse its discretion in admitting the evidence.

Having considered appellant's issues eleven and twelve and determining that the trial court did not abuse its discretion, we overrule both issues.

Issue Thirteen

Appellant's final issue contends that the testimony of Vaquera, regarding appellant's admission about gang membership, was inadmissible as statements made during a custodial interrogation without the requisite warnings contained in article 38.22. See art.

23

38.22.  Vaquera testified that ID-TDCJ maintains a program of trying to identify whether or not a new inmate has gang affiliations.  The process consists of observation of the inmate to determine if contact is made with known gang members and interviews of inmates to see if the inmate will admit gang membership.  According to the records that Vaquera received, appellant was interviewed in 2005 at the Hughes Unit of the ID-TDCJ and, during the interview, admitted that he was a member of the Arian Circle.  Further, Vaquera testified that the purpose of the interview is to properly segregate those inmates with gang affiliations for the inmate's safety.  According to Vaquera, the ID-TDCJ does not punish an inmate for admitting gang affiliation, rather the information is used for inmate and institutional security purposes.

Article 38.22 applies only to custodial interrogation.  See Dowthitt v. State, 931 S.W.2d 244, 263 (Tex.Crim.App. 1996).  Custodial interrogation occurs when a defendant is in custody and is exposed to any words or actions on the part of the police that the police should know are reasonably likely to elicit an incriminating statement.  See Roquemore v. State, 60 S.W.3d 862, 868 (Tex.Crim.App. 2001).  However, questions asked post-arrest of an jail inmate for administrative purposes, such as classification, do not constitute interrogation.  See Cross v. State, 144 S.W.3d 521, 525 n.5 (Tex.Crim.App. 2004).  Specifically, in a 2007 unpublished opinion, the Texas Court of Criminal Appeals held that questions regarding gang affiliation, which were part of the normal booking procedure and necessary for the safety of the inmates and employees, did not constitute interrogation.  See Ramirez v. State, AP-75,167, 2007 Tex.Crim.App.Unpub. LEXIS 610, at *46 (Tex.Crim.App. Dec. 12, 2007), cert. denied, 2008 U.S. LEXIS 6443 (Oct. 6, 2008).  The

24

Waco Court of Appeals held the same in Pierce v. State, 234 S.W.3d 265, 271-72 (Tex.App.–Waco 2007, pet. ref'd). The only distinguishing feature in these cases and the one before the court is that the cited cases involved booking at a county jail as opposed to classification issues within ID-TDCJ. However, the purpose of the questions regarding gang affiliation is the same, security for the inmate and the facility. We see no reason to create a new rule because one occurs in a local facility and another in the state system. We find that the questions regarding appellant's gang affiliation were not custodial interrogation for purposes of art. 38.22. See Ramirez, 2007 Tex.Crim.App.Unpub. LEXIS 610, at *46; Cross, 144 S.W.3d at 525 n.5; Pierce 234 S.W.3d at 271-72. Therefore, appellant's thirteenth issue is overruled.

Conclusion

Having overruled all of appellant's issues, we affirm the judgment of the trial court.

Mackey K. Hancock
Justice

Do not publish.

25