COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| ABRAHAM CAVAZOS, | § | No. 08-08-00303-CR |
| Appellant, | § | Appeal from the |
| v. | § | 210th District Court |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 20050D03248) |
| | § | |

**O P I N I O N**

A jury convicted Appellant, Abraham Cavazos, of murder and assessed his sentence at twenty-eight years' imprisonment and a $5,000 fine. In two issues on appeal, Appellant complains of the trial court's failure to sustain his objection to the prosecutor's closing argument and to include his requested instruction for manslaughter in the jury charge. We affirm.

**BACKGROUND**

On December 11, 2004, Bernice Gonzalez hosted a birthday party for Camille Martinez at her parent's home in El Paso. Samuel Beltran, who was in Bernice's English class, arrived around 8:30 p.m. accompanied by some friends, including Rogelio "Roy" Terrazas. Around 11 p.m., Appellant arrived at the party, wearing a pink and white striped shirt. Camille previously met Appellant at a nightclub.

As the party continued into the wee hours of the morning, Rogelio and his friends made comments towards Appellant, teasing him about the color of his shirt and calling him a "faggot." At one point, Rogelio told Appellant that he would show him something pink and exposed his penis. Rogelio then threw his plastic beer cup at Camille and Appellant. When Camille and Appellant got

up from the couch, Rogelio began to move away. As more words were exchanged between Rogelio and Appellant, Appellant stepped in front of Camille and shot Rogelio twice in the chest. Rogelio stumbled and fell to the floor. Appellant left with his friends. Rogelio died at the scene.

Appellant later phoned Leonor Salais and told her that he got drunk at a party. He further told her that he shot someone after that person provoked him. However, Appellant told Leonor that he did not mean to shoot anyone. Appellant then fled to Mexico but was extradited back three years later to stand trial.

Appellant was indicted for murder in two paragraphs. The first alleged that Appellant intentionally and knowingly caused the death of Rogelio by shooting him with a firearm, and the second alleged that Appellant, with intent to cause serious bodily injury to Rogelio, committed an act clearly dangerous to human life by shooting Rogelio with a firearm, which caused his death. At the conclusion of the State's case, the trial court granted Appellant's motion for directed verdict as to the first paragraph. Thus, the only issue before the jury was whether Appellant committed murder as alleged in the second paragraph.

## DISCUSSION

Appellant raises two issues for our review. The first alleges error in the prosecutor's closing argument and the second faults the trial court for failing to include a manslaughter instruction in the court's charge. We find no merit in either issue.

## Closing Argument

The facts giving rise to Appellant's first issue flow from the following colloquy occurring during the prosecutor's closing argument:

[Prosecutor]:   You, as the triers of the fact, you weigh the evidence. It's completely up to you. It is in your hands. This life was taken and it wasn't necessary. I heard nothing in this courtroom to justify the actions of Mr. Cavazos and don't believe –

[Appellant]:   Your Honor, I'm going to object. That's a comment on his failure to testify. And I object to that. We don't have any burden.

[Court]:   Ladies and gentleman of the jury, as I mentioned before the defense has no burden whatsoever and they don't have to put on evidence whatsoever. And you're so instructed on the jury charge.

[Appellant]:   Your Honor, it's necessary that I move for a mistrial at this point.

[Court]:   I'll overrule the request.

According to Appellant, the trial court erred by overruling his objection to the prosecutor's statement, "I heard nothing in this courtroom to justify the actions of Mr. Cavazos," which he contends was a comment on his failure to testify at trial. However, nothing in the record reflects that the trial court overruled his objection to the prosecutor's statement. Rather, the trial court simply gave an instruction to the jury. This does not equate to an adverse ruling on the objection. *See Mayberry v. State*, 532 S.W.2d 80, 84 (Tex. Crim. App. 1975) (trial court's response to objection that the "[j]ury will recall the evidence" was not an adverse ruling). The only adverse ruling was the trial court's denial of Appellant's motion for mistrial. Accordingly, the proper issue is not whether the trial court erred by overruling Appellant's objection to the prosecutor's comment but rather, whether the refusal to grant the mistrial was an abuse of discretion. *See Hawkins v. State*, 135 S.W.3d 72, 77-78 (Tex. Crim. App. 2004) (holding that when the trial court sustains an objection and instructs the jury to disregard but denies a motion for mistrial, the issue is whether the trial court

abused its discretion by denying the mistrial).

*Applicable Law*

A mistrial is an extreme remedy for conduct that is so prejudicial that expenditure of further time and expense would be wasteful and futile. *Hawkins*, 135 S.W.3d at 77. Only in dire circumstances, where the prejudice is incurable, will a mistrial be required. *Id*. Therefore, in reviewing a trial court's denial of a motion for mistrial, we balance three factors: (1) the severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks); (2) the measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the trial judge); and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction). *Id*.; *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g); *Newby v. State*, 252 S.W.3d 431, 438 (Tex. App. – Houston [14th Dist.] 2008, pet. ref'd).

*Severity of the Misconduct*

The federal and state constitutions guarantee an accused the right not to testify at his trial. *See* U.S. CONST. amend. V; TEX. CONST. art. I, § 10. Therefore, a prosecutor may not comment on the accused's failure to testify during argument. *Cruz v. State*, 225 S.W.3d 546, 548 (Tex. Crim. App. 2007). In determining whether a prosecutor's remark amounts to such an impermissible comment, "the offending language must be viewed from the jury's standpoint and the implication that the comment referred to the [accused's] failure to testify must be clear." *Bustamante v. State*, 48 S.W.3d 761, 765 (Tex. Crim. App. 2001). As noted by the Court of Criminal Appeals:

> It is not sufficient that the language might be construed as an implied or indirect allusion. The test is whether the language used was manifestly intended or was of such a character that the jury would necessarily and naturally take it as a comment on the defendant's failure to testify. In applying this standard, the context in which the comment was made must be analyzed to determine whether the language used was of such character.

*Cruz*, 225 S.W.3d at 548 (quoting *Bustamante*, 48 S.W.3d at 765).

Here, we do not find the prosecutor's comment directed at Appellant's failure to testify; rather, we believe the prosecutor was simply referring to the testimonies given by the four witnesses to the murder and the events leading up to the crime. Indeed, Camille testified to the teasing, the confrontation, the killing, and then Appellant's flight. Samuel testified that Rogelio blew a kiss to Camille that led to an exchange of words between Appellant and Rogelio, and after Rogelio threw the cup of beer, Samuel stated that Appellant got mad, declared, "Don't you know I'm a fucking carnal," and pulled out a gun and shot Rogelio twice. Bernice stated that she heard gunshots while in the bathroom, and upon learning that Rogelio was shot, she called 911 and then performed CPR on him. Roger testified that he ran out of the bathroom upon hearing two gunshots, saw Appellant with the gun in his hand, and asked what happened, to which Appellant replied, "I got this fool."

From this recitation of the events, it is reasonable to infer that the prosecutor was merely referring to the testimony presented by these four witnesses, that is, that their testimony did not in any manner suggest that Appellant had any justification for shooting an unarmed victim, who merely verbally teased him. *See* TEX. PENAL CODE ANN. § 9.31(b)(1) (Vernon Supp. 2010) (the use of force is not justified in response to verbal provocation alone). Indeed, the next statement made by the prosecutor was "[k]eep your focus on the testimony that you heard from those witnesses at the party . . . ." Therefore, as seen from the jury's standpoint, we do not believe the jury would have thought the prosecutor's language was manifestly intended to be, or of such character that they would naturally and necessarily consider it to be, a comment on Appellant's failure to testify. *See Meridyth v. State*, 163 S.W.3d 305, 311 (Tex. App. – El Paso 2005, no pet.) (finding prosecutor's argument that "[t]here has been no controverting evidence that the cocaine . . . was found in defendant's hat brim. None whatsoever. Nobody got up there and said, 'No, it is mine.' 'No, it is not cocaine.'

Nothing," was not a comment on defendant's failure to testify since others besides defendant could have testified as to whether the substance found was cocaine, as to whether the cocaine was found in his hat brim, or as to whether the cocaine was theirs); *Alba v. State*, No. 05-96-00409-CR, 1998 WL 19955, at *6-7 (Tex. App. – Dallas Jan. 22, 1998, no pet.) (op., not designated for publication) (construing comment that "[i]f they wanted witnesses, somebody, you know, that would say that he didn't commit the crime – in other words, a witness who was there, they could have issued a subpoena just like we did for our witness," as concerning appellant's failure to present any testimony other than his own that the State's witnesses were lying when there was another witness to the murder that was not called to testify). Because the prosecutor's remark was not a comment on Appellant's failure to testify, we cannot conclude that the remark constituted misconduct, much less that it was severe. This factor weighs against Appellant.

*Curative Measures*

The second factor concerns the measures adopted to cure the misconduct. Although a prompt instruction to disregard will cure almost any improper argument, *see Dinkins v. State*, 894 S.W.2d 330, 357 (Tex. Crim. App. 1995), we note that the trial court did not instruct the jury to disregard the comment here. However, if a defendant requests a mistrial without asking for an instruction to disregard when the error could have been cured by such an instruction, reversal is not warranted. *Young v. State*, 137 S.W.3d 65, 70 (Tex. Crim. App. 2004). Having previously concluded that the prosecutor did not engage in severe misconduct, we believe that an instruction to disregard would have been sufficient to cleanse the jurors' minds of the complained-of comment. *See id*. at 67-68 (holding that venireperson's statement in aggravated sexual assault of a child case that in twenty-five years' of social work she had never had a child lie about being sexually assaulted did not warrant a mistrial because an instruction, had it been requested, would have cured any prejudice from the

remarks); *Long v. State*, 823 S.W.2d 259, 267 n.9 (Tex. Crim. App. 1991) (prosecutor's argument that used an Adolf Hitler analogy, implying defendant was evil, could have been cured by an instruction to disregard).

Moreover, we note that the trial court instructed the jury that "the defense has no burden whatsoever and they don't have to put on evidence whatsoever," and referred the jury to the court's charge. The jury charge properly instructed the jury that Appellant's failure to testify cannot be considered for any purpose in assessing guilt or innocence. Thus, the jury was aware that it could not consider Appellant's failure to testify in determining guilt. *See Hawkins*, 135 S.W.3d at 84 (noting that appellate court should review the jury charge in considering curative measures); *Prince v. State*, 192 S.W.3d 49, 57 (Tex. App. – Houston [14th Dist.] 2006, pet. ref'd) (prosecutor's argument that jury could consider extraneous offenses in assessing guilt for the charged offense was cured by trial court's instruction to refer to the charge, which stated the limited nature for which extraneous offenses could be considered). Based on these considerations, we find that the second factor weighs against Appellant as well.

### Certainty of the Conviction

The final factor considers the certainty of Appellant's conviction absent the comment. Here, Samuel testified that he saw Appellant shoot and kill Roy, and Roger testified that he heard gunshots and saw Appellant holding a gun in his hand. Moreover, Appellant admitted to Roger and Leonor that he shot Roy. Accordingly, we believe Appellant's conviction was certain regardless of the comment and find that the third factor weighs against Appellant. *See Wilson v. State*, 179 S.W.3d 240, 250 (Tex. App. – Texarkana 2005, no pet.) (finding conviction was certain without the misconduct when there was no dispute that appellant shot and killed the victim).

### Balancing the Factors

In sum, after weighing the appropriate factors, we hold that the trial court did not abuse its discretion by denying Appellant's motion for mistrial stemming from the prosecutor's comment during closing argument. The prosecutor's comment was not misconduct, the jury was instructed that it could not consider Appellant's failure to testify as evidence against him, and Appellant's conviction was certain absent the comment. Finding no incurable prejudice from the complained-of comment, Appellant was not entitled to a mistrial. As such, his first issue is overruled.

## Manslaughter Instruction

Appellant's second issue contends that the trial court erred by failing to include a manslaughter instruction in the jury charge despite evidence suggesting that he did not intend to shoot anybody. The State responds that manslaughter is not a lesser-included offense of murder and that there is no evidence that Appellant is guilty only of manslaughter.

### *Standard of Review*

In determining whether the trial court should have given a jury charge on a lesser-included offense, we employ a two-pronged test. *Hall v. State*, 225 S.W.3d 524, 535-36 (Tex. Crim. App. 2007). First, we determine if the proof necessary to establish the charged offense includes the lesser offense. *Id*. at 535-36. If it does, we then review the evidence to determine that if the accused is guilty, he is guilty only of the lesser offense. *Id*. at 536.

### *Is Manslaughter a Lesser-Included Offense of Murder?*

Under article 37.09, the uncharged offense is a lesser-included offense of the charged one if it "is established by proof of the same or less than all the facts required to establish the commission of the offense charged," or "differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission." TEX. CODE CRIM. PROC. ANN. art. 37.09(1), (3) (Vernon 2006). Here, Appellant was charged with murder under section 19.02(b)(2) of the Penal

Code, that is, that he, with intent to cause serious bodily injury, committed an act clearly dangerous to human life that caused another's death. *See* TEX. PENAL CODE ANN. § 19.02(b)(2) (Vernon 2003). Manslaughter, on the other hand, occurs when a person recklessly causes the death of another. *See* TEX. PENAL CODE ANN. § 19.04 (Vernon 2003).

In *McCoy v. State*, No. 08-00-00166-CR, 2001 WL 1137606, at *3 (Tex. App. – El Paso Sept. 27, 2001, no pet.) (op., not designated for publication), we held that manslaughter was a lesser-included offense of murder under section 19.02(b)(2), noting that "manslaughter requires a less culpable mental state and it does not require proof that the actor committed an act clearly dangerous to human life." However, since our holding, the Court of Criminal Appeals has clarified that we must use a cognate-pleadings approach in identifying lesser-included offenses and cannot consider the evidence adduced at trial:

> An offense is a lesser-included offense of another offense, under Article 37.09(1) of the Code of Criminal Procedure, if the indictment for the greater-inclusive offense either: (1) alleges all of the elements of the lesser-included offense, or (2) alleges elements plus facts (including descriptive averments, such as non-statutory manner and means, that are alleged for purposes of providing notice) from which all of the elements of the lesser-included offense may be deduced. Both statutory elements and any descriptive averments alleged in the indictment for the greater-inclusive offense should be compared to the statutory elements of the lesser offense. If a descriptive averment in the indictment for the greater offense is identical to an element of the lesser offense, or if an element of the lesser offense may be deduced from a descriptive averment in the indictment for the greater-inclusive offense, this should be factored into the lesser-included-offense analysis in asking whether all of the elements of the lesser offense are contained within the allegations of the greater offense.

*Ex parte Watson*, 306 S.W.3d 259, 273 (Tex. Crim. App. 2009) (op. on reh'g). Using the cognate-pleadings approach, we take this opportunity to reexamine our holding in *McCoy* and conclude that manslaughter is not a lesser-included offense of the murder charged here.

The indictment alleged Appellant, with intent to cause serious bodily injury to Rogelio,

committed an act clearly dangerous to human life by shooting Rogelio with a firearm, which caused his death. Thus, the elements of the charged murder are that (1) Appellant (2) intended to cause serious bodily injury to Rogelio and (3) committed an act clearly dangerous to human life that caused Rogelio's death (4) by shooting him with a firearm. It is important to note that the State was not required to prove that Appellant intended to cause Rogelio's death in this scenario; rather, the State was only required to prove that Appellant intended to cause serious bodily injury to Rogelio, which in turn caused Rogelio's death. *See Lugo-Lugo v. State*, 650 S.W.2d 72, 81-82 (Tex. Crim. App. 1983) (op. on reh'g). Indeed, neither the statute nor the indictment requires a culpable mens rea for committing an act clearly dangerous to human life. *See* Tex. Penal Code Ann. § 19.02(b)(2). Therefore, much like felony murder, the murder charged in this case does not require a culpable mental state for causing another's death. *See Lomax v. State*, 233 S.W.3d 302, 307 (Tex. Crim. App. 2007) (holding that a culpable mental state is not required for the act of felony murder as statute simply recites that a person commits murder if he commits or attempts to commit a felony and in the course thereof, he commits an act clearly dangerous to human life that causes the death of an individual).

In contrast, the statutory elements of manslaughter require proof that Appellant recklessly caused Rogelio's death. *See* Tex. Penal Code Ann. § 19.04. Therefore, manslaughter actually requires proof of a culpable mental state for causing the death of an individual whereas the murder charged here, as discussed above, requires no proof of a culpable mental state for causing the death of an individual. As such, the elements of the requested lesser-included offense are not established by proof of the same or less than all of the facts required to establish the commission of the charged offense, nor does the proposed lesser-included offense differ from the offense charged only in the respect that a less culpable mental state suffices to establish its commission. *See* Tex. Code Crim.

PROC. ANN. art. 37.09(1), (3). Thus, we conclude manslaughter is not a lesser-included offense of the charged murder in this case, and the trial court did not err by denying Appellant's request to instruct the jury on manslaughter. *See, e.g., Zavala v. State*, No. 05-08-00621-CR, 2009 WL 2343261, at *1 (Tex. App. – Dallas July 31, 2009, pet. ref'd) (mem. op., not designated for publication) (concluding that manslaughter is not a lesser-included offense of felony murder as manslaughter requires a culpable mental state for causing death and felony murder does not).

*Is Appellant Only Guilty of Manslaughter?*

Even if we were to conclude that manslaughter is a lesser-included offense of the murder charged here, we find no evidence in the record that if Appellant is guilty, he is only guilty of manslaughter. Appellant asserts that he did not intend to shoot Rogelio.[1] However, the Court of Criminal Appeals has noted that "firing a gun in the direction of an individual is an act clearly dangerous to human life." *Forest v. State*, 989 S.W.2d 365, 368 (Tex. Crim. App. 1999). Therefore, regardless of whether he intended to kill Rogelio, the evidence shows he intended to cause serious bodily injury to Rogelio by pointing a gun at him and pulling the trigger, which was an act clearly dangerous to human life. As Appellant, at the very least, was guilty of murder under section 19.02(b)(2), there is no evidence that if he was guilty, he was guilty only of manslaughter. *See, e.g., id.* (concluding that there was no evidence that appellant was guilty of anything other than at least murder under section 19.02(b)(2) when he meant to shoot the victim "in the butt" and did so, but claimed he did not intend to kill him; therefore, appellant was not entitled to lesser-included instruction on aggravated assault); *Jackson v. State*, 115 S.W.3d 326, 330-31 (Tex. App. – Dallas

---

[1] Appellant argues that there is evidence in the record to suggest that he did not intend to kill Rogelio. However, as explained before, murder under section 19.02(b)(2) does not require an intent to cause death; rather, it requires an intent to cause serious bodily injury. *See* TEX. PENAL CODE ANN. § 19.02(b)(2); *Lugo-Lugo*, 650 S.W.2d at 81.

2003), *aff'd*, 160 S.W.3d 568 (Tex. Crim. App. 2005) (concluding that appellant's intentional act of hitting victim over the head with a hammer showed that appellant intentionally caused serious bodily injury and committed an act clearly dangerous to human life that caused the victim's death such that appellant, if guilty, was not only guilty of manslaughter); *Juarez v. State*, 961 S.W.2d 378, 384 (Tex. App. – Houston [1st Dist.] 1997, pet. ref'd) (concluding that firing a gun at an occupied car although not pointing the gun straight towards the occupants was evidence that appellant intended to cause seriously bodily injury and committed an act clearly dangerous to human life that caused the victim's death such that he was not only guilty of involuntary manslaughter). Accordingly, Appellant was not entitled to an instruction on manslaughter and the trial court did not err by refusing to charge the jury on that offense. Appellant's second issue is overruled.

## CONCLUSION

Having overruled Appellant's issues, we affirm the trial court's judgment.


                                        GUADALUPE RIVERA, Justice

November 3, 2010

Before McClure, J., Rivera, J., and Antcliff, Judge
Antcliff, Judge, sitting by assignment

~~(Do Not Publish)~~
(Publish)