Gevin **PIERCE**, Appellant

v.

The **STATE** of Texas, Appellee.

No. 10–06–00111–CR.

Court of Appeals of Texas, Waco.

Aug. 15, 2007.

---

Angela J. Moore, Chief Public Defender, for appellant.

Susan D. Reed, Bexar County Dist. Atty., San Antonio, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

BILL VANCE, Justice.

Gevin Pierce appeals his murder conviction and 99–year prison sentence, raising five issues. Pierce alleges error in: (1) the denial of his mistrial motion based on a witness's comment that she spoke with Pierce in jail; (2) the admission of testimony of a medical examiner who did not perform the victim's autopsy or write the autopsy report; (3 and 4) the failure to submit lesser-included offenses; and (5) the admission of evidence of Pierce's former gang affiliation in the punishment phase. Finding no error, we will affirm.

### Factual Background

Pierce does not challenge the sufficiency of the evidence. Briefly, the evidence shows that Pierce had agreed to meet Timothy Bassette in the evening at a gas station to sell him crack cocaine for $20. Pierce got out of his vehicle and approached Bassette's van. While they were negotiating, another car drove up, and it was apparent to Bassette that Pierce knew the occupants. This made Bassette nervous; he felt outnumbered and that he was about to be robbed, so he would not let Pierce in his van and began to drive away. Pierce was demanding money from Bassette and became angry. Pierce went to his vehicle, pulled out a handgun, said "dump on this fool," and, while running after it, fired three to five shots at Bassette's van, hitting it once. Martin Narvaiz and his girlfriend were also at the gas station in Narvaiz's car at the same time. One of the shots fired by Pierce struck Narvaiz in the head and killed him. Pierce was indicted for the murder of Narvaiz, and a jury found him guilty.

### Mistrial

In his first issue, Pierce asserts that the trial court erred in denying his

motion for a mistrial. Shacole Williams, Pierce's cousin and one of the several young women who were with Pierce on the night of the offense, was a reluctant witness who was in custody under a writ of attachment when she testified. Under questioning from the State, Williams said she had seen Pierce that morning when she "was going through booking ... over at the jail." The trial court sustained Pierce's objection, the jury was excused, and the parties argued the objection (that the State had elicited testimony revealing that Pierce was in jail, thus impairing Pierce's presumption of innocence) and Pierce's motion for mistrial. When the jury returned, the trial court instructed the jury to disregard Williams's last answer. Williams then testified that when she saw Pierce that morning, he told her to "take the Fifth," that she didn't "have to say anything."

■ After the parties briefed the issue over the weekend, the trial court denied the motion for mistrial. We review a trial court's denial of a motion for mistrial for an abuse of discretion. *See Hawkins v. State*, 135 S.W.3d 72, 76–77 (Tex.Crim. App.2004). A mistrial is appropriate only for highly prejudicial and incurable errors. *Simpson v. State*, 119 S.W.3d 262, 272 (Tex.Crim.App.2003). "Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required." *Hawkins*, 135 S.W.3d at 77. In most instances, an instruction to disregard will cure the prejudicial effect. *Wesbrook v. State*, 29 S.W.3d 103, 115–16 (Tex.Crim. App.2000). An instruction to disregard is presumptively inadequate only in the most blatant cases; only offensive or flagrantly improper conduct warrants reversal when there has been an instruction to disregard. *Wilkerson v. State*, 881 S.W.2d 321, 327 (Tex.Crim.App.1994).

■ Indicia of the defendant's incarceration can invalidate his right to the presumption of innocence. *Randle v. State*, 826 S.W.2d 943, 946 (Tex.Crim.App.1992). But an instruction to disregard can cure the prejudicial effect of such a reference. *See Sharper v. State*, 22 S.W.3d 557, 558–59 (Tex.App.-Texarkana 2000, no pet.); *Bledsoe v. State*, 21 S.W.3d 615, 624 (Tex. App.-Tyler 2000, no pet.). The reference to Pierce's incarceration was ambiguous—and thus hardly flagrant—because Williams was in custody and in jail clothing, while Pierce was in civilian clothing, and Williams said that she saw Pierce while *she* was going through booking at the jail. Pierce concedes that an instruction to disregard generally cures such a reference but argues that this reference was not curable because it led to testimony of a possible extraneous offense—witness tampering by Pierce by telling Williams to "take the Fifth" and not to testify. But such evidence is admissible in any event to show the defendant's consciousness of guilt. *See Peoples v. State*, 874 S.W.2d 804, 809 (Tex.App.-Fort Worth 1994, pet. ref'd) ("evidence that a witness has been threatened or that someone has attempted to coerce her testimony is admissible to show the accused's 'consciousness of guilt' ").

The instruction to disregard Williams's jail reference cured any prejudicial effect. *See Sharper*, 22 S.W.3d at 558–59 (single reference to defendant's being in "holdover" cured by instruction to disregard); *Bledsoe*, 21 S.W.3d at 624 (same). Also, the reference was not flagrant, and because the evidence of Pierce's guilt was overwhelming, the certainty of conviction without the alleged incarceration reference was great. We hold that the trial court did not abuse its discretion in denying the motion for mistrial. Pierce's first issue is overruled.

## Autopsy Evidence

Dr. Susie Dana, a pathologist, performed the autopsy on Narvaiz and wrote the autopsy report. At the time of trial, Dr. Dana was no longer employed by the Bexar County medical examiner. Thus, and over Pierce's Confrontation Clause objection, Dr. Randy Frost, a Bexar County deputy medical examiner who was a signatory to Dr. Dana's report, testified about the autopsy findings. The trial court excluded the report but allowed Dr. Frost to testify from the report; he concluded that Narvaiz died from a gunshot wound to the head caused by a firearm, which is a deadly weapon.

■ Pierce's second issue asserts that his confrontation rights were violated because Dr. Frost was allowed to testify from the autopsy report and Dr. Dana was not available for confrontation and cross-examination. The "testimonial statements" of witnesses absent from trial are admissible over a Sixth Amendment Confrontation Clause objection only when the declarant is unavailable and only where the defendant has had a prior opportunity to cross-examine. *Crawford v. Washington*, 541 U.S. 36, 59, 124 S.Ct. 1354, 1368–69, 158 L.Ed.2d 177 (2004). The threshold issue in a *Crawford* analysis is whether the statements were testimonial. *Kearney v. State*, 181 S.W.3d 438, 442 (Tex.App.-Waco 2006, pet. ref'd). At least two courts have held that autopsy reports are not testimonial. *See Mitchell v. State*, 191 S.W.3d 219, 221–22 (Tex.App.-San Antonio 2005, pet. ref'd); *Denoso v. State*, 156 S.W.3d 166, 170 (Tex.App.-Corpus Christi 2005, pet. ref'd). *Mitchell* squarely addresses Pierce's complaint; there the testifying pathologist was not the autopsy report's author, but because the defendant had the opportunity to confront and cross-examine

that witness, the inability to confront and cross-examine the autopsy report author was not a confrontation violation. *Mitchell*, 191 S.W.3d at 222. We overrule issue two.

## Lesser–Included Offenses

■ Pierce's third and fourth issues complain of the trial court's refusal to submit lesser-included offense instructions for manslaughter and criminally negligent homicide. In determining whether to submit a lesser included charge, the trial court must conclude that: (1) the requested charge is for a lesser-included offense of the charged offense; and (2) there is some evidence that, if the defendant is guilty, he or she is guilty only of the lesser offense. *Guzman v. State*, 188 S.W.3d 185, 188 (Tex.Crim.App.2006). The Court of Criminal Appeals recently held that we determine the first issue from the pleadings. *Hall v. State*, 225 S.W.3d 524, 535 (Tex. Crim.App.2007). Therefore, we must compare the statutory elements of murder as set out in the indictment to the elements of the requested lesser offenses. *Id.* at 535–36. This issue is a legal question and does not depend on the evidence presented at trial. *Id.* at 535. If the first requirement is met, we determine the second issue by reviewing the evidence to determine if there is any evidence that, if Pierce is guilty, he is guilty only of the lesser offense. *Id.* at 536.

■ The indictment charged Pierce with murder in a two-paragraph count, alleging that he intentionally and knowingly caused the death of Narvaiz by shooting him with a firearm, and that he, intending to cause serious bodily injury to Narvaiz, committed an act clearly dangerous to human life by shooting at and in the direction of Narvaiz with a firearm, thereby causing

his death.[1] *See* Tex. Pen.Code Ann. § 19.02(b)(1–2) (Vernon 2003). We agree with Pierce and the State that manslaughter (recklessly causing a person's death)[2] and criminally negligent homicide (causing a person's death by criminal negligence)[3] are lesser-included offenses of the offense of murder as charged in the indictment. We make that determination by considering only the statutory elements of murder as they were modified by the particular allegations in the indictment. *See Hall,* 225 S.W.3d at 536–37. Those allegations are that:

(1) Pierce

(2) intentionally and knowingly

(3) caused the death of Narvaiz

(4) by shooting him with a deadly weapon, namely a firearm;

or

(1) Pierce

(2) with intent to cause Narvaiz serious bodily injury

(3) caused the death of Narvaiz

(4) by committing an act clearly dangerous to human life, namely, shooting at and in the direction of Narvaiz with a deadly weapon, namely a firearm.

We then compare those elements with the elements of the lesser offenses of manslaughter and criminally negligent homicide that could be included in the offense of murder. *See id.* Those elements are:

(1) Pierce

(2) recklessly

(3) caused the death of Narvaiz

(4) by shooting him with a deadly weapon, namely a firearm;

and

(1) Pierce

(2) with criminal negligence

(3) caused the death of Narvaiz

(4) by shooting him with a deadly weapon, namely a firearm.

In *Hall* the question asked after comparing the elements of the offenses was: Are the elements of the lesser offense "established by proof of the same or less than all the facts required to establish the commission of the offense charged"? *Id.* This analysis and question were based on application of a lesser-included offense under article 37.09(1). Our analysis in this case is based on article 37.09(3). *See* Tex. Code Crim. Proc. Ann. art. 37.09(3) (Vernon 2006). Thus, using the *Hall* analytical construct, but asking the question appro-

---

1. The jury was charged on the law of transferred intent.

2. Tex. Pen.Code Ann. § 19.04(a) (Vernon 2003). Section 6.03(c) provides:

 A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

 *Id.* § 6.03(c).

3. *Id.* § 19.05(a). Section 6.03(d) provides:

 A person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

 *Id.* § 6.03(d).

priate to this case, we ask: Do the elements of the lesser offense "differ ... from the offense charged only in the respect that a less culpable mental state suffices to establish its commission"? *See Hall*, 225 S.W.3d at 536–37. The answer is yes for both manslaughter and criminally negligent homicide in this case; the two lesser offenses are distinguishable from the murder offense as charged in the indictment only by their less culpable mental states. *See* TEX.CODE CRIM. PROC. ANN. art. 37.09(3). We thus proceed to the second issue in the lesser-included analysis, where we ask whether there is evidence that supports giving the lesser-included instruction to the jury.

A defendant is entitled to an instruction on a lesser-included offense where there is some evidence in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser-included offense. *Id.* at 536. In this step, anything more than a scintilla of evidence may be sufficient to entitle a defendant to a lesser charge. *Id.* In other words, the evidence must establish the lesser-included offense as "a valid, rational alternative to the charged offense." *Id.*

In this case, the evidence shows that when Bassette backed out of the drug deal (or shortchanged Pierce, according to Johnny Craig, who was in Pierce's truck at the time of the shooting and later heard Pierce tell another about the shooting), Pierce became angry, went to his car and got his gun, saying "Dump on this fool." Running after Bassette's fleeing van, Pierce shot five rounds at it, hitting it with one shot and hitting Narvaiz once with another. Pierce fled the scene on foot to a nearby apartment, and later that evening learned that someone had been shot.

There is no evidence that Pierce, by firing five shots at Bassette's fleeing van, did not intend to kill or to inflict serious bodily injury. *See, e.g., Patterson v. State*, 950 S.W.2d 196, 200–01 (Tex.App.-Dallas 1997, pet. ref'd); *Juarez v. State*, 961 S.W.2d 378, 384 (Tex.App.-Houston [1st Dist.] 1997, pet. ref'd). Thus, the trial court did not err in refusing to submit the lesser offenses. Issues three and four are overruled.

### Evidence of Gang Affiliation

Pierce's fifth issue complains that the trial court erred in the punishment phase when it admitted evidence of Pierce's written acknowledgement of his former gang affiliation that was signed by Pierce while in Bexar County jail on an unrelated charge. Pierce's acknowledgment, obtained during an interview with Pierce by the county jail's classification department, states that he is an ex-member of the 74 Hoover Crips. The classification process is done to assign inmates to a custody level according to their backgrounds and characteristics. Inmates are asked about their criminal history, prior institutional behavior, education, and mental health. Gang affiliation is also inquired into for threats to other inmates and to the jail facility security and safety because gang activity occurs in the jail.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *McDonald v. State*, 179 S.W.3d 571, 576 (Tex.Crim.App.2005). Pierce asserts that, because the acknowledgement was a written statement made by Pierce while he was in custody, Code of Criminal Procedure article 38.22 applies and the statement fails to show on its face that Pierce received article 38.22's statutory *Miranda* warnings.

Article 38.22 generally precludes the use of a defendant's statements that result from custodial interrogation ab-

sent compliance with its procedural safeguards. *See* Tex.Code Crim. Proc. Ann. art. 38.22 (Vernon 2005). But it does not preclude admission of statements that do not stem from custodial interrogation. *See id.* art. 38.22, § 5. Thus, if Pierce's gang affiliation statement does not stem from custodial interrogation, article 38.22 does not require its exclusion. *See Morris v. State,* 897 S.W.2d 528, 531 (Tex.App.El Paso 1995, no pet.). Not all post-arrest police questioning can be classified as "interrogation." *Jones v. State,* 795 S.W.2d 171, 174 (Tex.Crim.App.1990). Interrogation refers to words, actions, or questioning by the police that the police should know are reasonably likely to elicit an incriminating response from the accused. *Rhode Island v. Innis,* 446 U.S. 291, 300–01, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980); *Jones,* 795 S.W.2d at 174. "Questions normally attendant to arrest, custody, or administrative 'booking' procedure do not constitute 'interrogation' for purposes of *Miranda* or *Edwards* [*v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981) ]." [4] *Cross v. State,* 144 S.W.3d 521, 524 n. 5 (Tex.Crim.App.2004) (citing *Pennsylvania v. Muniz,* 496 U.S. 582, 601, 110 S.Ct. 2638, 2650, 110 L.Ed.2d 528 (1990); *South Dakota v. Neville,* 459 U.S. 553, 564 n. 15, 103 S.Ct. 916, 923 n. 15, 74 L.Ed.2d 748 (1983); *Innis,* 446 U.S. at 301, 100 S.Ct. at 1689; *Clayton v. Gibson,* 199 F.3d 1162, 1173 (10th Cir.1999) (noting that "routine booking questions do not constitute interrogation because they do not

normally elicit incriminating responses")); *see also Jones,* 795 S.W.2d at 174 n. 3; *Morris,* 897 S.W.2d at 531.

When he admitted his former gang affiliation, Pierce was going through the jail's normal classification process. We hold that, in the absence of evidence that the offense for which Pierce was in custody was gang-related, the trial court did not abuse its discretion in admitting Pierce's former gang affiliation acknowledgment. *See Innis,* 446 U.S. at 300–01, 100 S.Ct. at 1689–90; *Cross,* 144 S.W.3d at 524 n. 5; *Cruse v. State,* 882 S.W.2d 50, 51–52 (Tex.App.Houston [14th Dist.] 1994, no pet.) (interview of defendant by investigator for pretrial services department charged with acquiring basic information from arrestees in order to determine possibilities for pretrial release was not "custodial interrogation" requiring statutory warning). In this case, the jail classification information sought from Pierce was not interrogation—it was not designed to elicit an incriminating response from Pierce. Therefore, we overrule Pierce's fifth issue.

Having overruled all of Pierce's issues, we affirm the trial court's judgment.

---

4. A four-justice plurality opinion in *Pennsylvania v. Muniz* recognized a "routine booking question" exception that exempts from *Miranda* questions to secure the biographical data necessary to complete booking or pretrial services. *Pennsylvania v. Muniz,* 496 U.S. 582, 601, 110 S.Ct. 2638, 2650, 110 L.Ed.2d 528 (1990) (plurality op.). The justices also noted an exception to the exception:

"[R]ecognizing a 'booking exception' to *Miranda* does not mean, of course, that any question asked during the booking process falls within that exception. Without obtaining a waiver of the suspect's *Miranda* rights, the police may not ask questions, even during booking, that are designed to elicit incriminatory admissions." *Id.* at 602 n. 14, 110 S.Ct. at 2650 n. 14.