COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| FRANKIE DALE ROGERS, | § | |
| | | No. 08-09-00305-CR |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | County Criminal Court at Law No. One |
| THE STATE OF TEXAS, | § | |
| | | of El Paso County, Texas |
| Appellee. | § | |
| | | (TC# 20080C10660) |
| | § | |

**O P I N I O N**

Appellant, Frankie Dale Rogers, was convicted of assault and sentenced to 365 days in jail, probated for two years. In two issues on appeal, he contends that the evidence is insufficient and that the trial court erred by denying his motion for mistrial. For the following reasons, we affirm.

**BACKGROUND**

Although only married for a year and a half, Appellant and Maria Martinez had been in a relationship for nine years, and Appellant fathered Martinez's son, Brandon. While in their apartment on May 21, 2008, the couple argued on and off for a couple of hours about intimacy and Brandon's performance in school. Finally, Martinez went to the bedroom to go to sleep. However, Appellant threw water on her and called her names. As the arguments continued, Martinez tried to walk away from Appellant, but he followed and pushed her a couple of times. One of those pushes caused Martinez to fall onto a wooden chair in the kitchen and then to the floor. Another push caused her to fall onto the sides of the wooden arms of a futon in the living room, hurting her legs.[1]

---

[1] At trial, Martinez testified that the object she was pushed into could be used as a couch or bed, and that the object had wooden sides "for the hands." Appellant's own testimony described the piece of furniture as a futon.

That push occurred when Martinez's back was to Appellant and he pushed her forward into the futon, causing her thigh to hit the corner of the arm.[2] When Brandon called from the other room, Appellant went to him, telling him that Martinez was "acting like a baby." Martinez and Appellant then continued arguing until the morning.

Martinez decided not to call the police that night as Appellant previously warned her that if she ever told the police that he assaulted her, he would punch her to "let [her] know how an assault is." Rather, Martinez sought counseling from her church. But on May 29, 2008, Martinez went to the police station to press charges. There, Martinez spoke to Officer Senclair and gave a statement of the incident. The officer noted that Martinez looked scared and seemed upset. After speaking with her, Officer Senclair took photographs of the bruises on her legs. The bigger bruises, according to Martinez, were caused from the push to the wooden arms on the futon whereas the smaller bruises were caused from the push to the kitchen chair. Officer Senclair confirmed that the bruises appeared to be a couple of days old but refused to say whether the bruises could be fainter if they first occurred a week before. Although Martinez told the police that Appellant pushed her, causing the bruises to her legs, she did not provide any details as to how it occurred or how she fell.

At trial, Appellant took the stand in his own defense, testifying that he could not recall any dates in May 2008 where he pushed, shoved, or knocked down Martinez. Nor did he remember arguing with Martinez on May 21, 2008. Moreover, Appellant denied that the futon's arms were wooden, explaining instead that they were metal, and that they consisted of "rounded" 90 degree corners, thus implying that Martinez could not have injured her legs on the same.

---

[2] During cross-examination, Appellant questioned whether Martinez told the police that he pushed her on her chest, but Martinez did not remember telling the police that and expressly testified that he pushed her on her back. Martinez also stated that she did not review her police statement before signing it as it was written in English and she is only comfortable reading Spanish.

# DISCUSSION

On appeal, Appellant raises two issues. The first contends that the evidence was legally insufficient to support his conviction for assault, and the second faults the trial court for denying his motion for mistrial when the State violated his motion in limine. Having reviewed the record, we find that both issues lack merit.

## *Sufficiency of the Evidence*

In reviewing the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Such a standard not only gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony and to weigh the evidence accordingly, but it also enables the fact finder to draw reasonable inferences from basic to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. Indeed, the trier of fact is the sole judge of the weight and credibility of the evidence, *see Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008), *cert. denied*, 129 S.Ct. 2075, 173 L.Ed.2d 1139 (2009), and therefore we, in performing our sufficiency review, may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact finder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1131, 120 S.Ct. 2008, 146 L.Ed.2d 958 (2000). Instead, we determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). Moreover, we presume that the fact finder resolved any conflicting inferences in favor of the verdict

and defer to that resolution.  *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

Here, the State charged Appellant with having caused bodily injury to Martinez by pushing her about the body with his hands.  Having set out the evidence above, we believe the jury could have reasonably determined that Appellant assaulted Martinez by pushing her into the kitchen chair and later, into the arms of the futon, causing her pain and bruises.  Indeed, the record reflects that after arguing with Martinez, throwing water on her, and calling her names, Appellant pushed her twice despite Martinez's attempts to walk away from him.  The first push caused Martinez to fall onto a wooden chair and then to the floor, and the second push caused her to fall onto the arms of the futon, both of which hurt her.  Both incidents left her with bruises on her legs, and Officer Senclair confirmed those bruises to her legs.  Such evidence was certainly sufficient to support Appellant's conviction for assault as set out in the information.  *See Arzaga v. State*, 86 S.W.3d 767, 773, 778-79 (Tex. App. – El Paso 2002, no pet.) (finding sufficient evidence of assault where Appellant punched victim in face and photographs showed swelling and bruising to victim's lips); *John v. State*, No. 2-08-151-CR, 2009 WL 1815650, at *2 (Tex. App. – Fort Worth June 25, 2009, no pet.) (mem. op., not designated for publication) (finding sufficient evidence of assault where victim testified that Appellant grabbed her neck and face, punched her in the chest, and hit her face, causing a black eye, and the photographs admitted showed victim's bruising).

Nevertheless, Appellant attacks Martinez's credibility, asserting that Martinez had time to fabricate a story to fit the bruises found on her legs by waiting a few days to talk to the police and over a year to testify at trial.  He further alleges that Martinez stated on cross-examination that he pushed her on the chest, thus questioning how she could turn around in the process of falling and strike her legs against the arms of the futon.  However, Martinez expressly denied that Appellant pushed her on her chest, stating instead that he pushed her on her back.  Moreover, any conflict in

Martinez's testimony was for the jury to resolve. *See Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000). As the sole judge of the weight and credibility of the testimony, the jury, by its verdict, chose to believe Martinez and resolve any conflicts in her testimony in favor of the State. *See Brown*, 270 S.W.3d at 568. We defer to that resolution. *See Dewberry*, 4 S.W.3d at 740. Finding the evidence sufficient, we overrule Issue One.

*Mistrial*

In his second issue, Appellant contends that the trial court erred by failing to grant his motion for mistrial when the State allegedly violated an agreed-to motion in limine. The record reflects that Appellant filed a motion in limine, requesting the State to refrain from making any reference concerning the facts, possibility, or possible fact that he has been charged with or convicted of any offense, or engaged in other acts of misconduct or crimes of moral turpitude until a ruling of admissibility was made by the trial court. At a hearing held approximately six months before trial, the State noted to the court that it had no opposition to Appellant's motion in limine. The court, however, did not rule on the motion but rather noted that the motion was something that could be addressed immediately before trial. Later that same day, the State gave written notice of its intent to introduce extraneous offenses and bad acts, specifically noting that Appellant was convicted twice before of violation of a protective order. Appellant did not request a ruling on his motion in limine again.

However, during Appellant's cross-examination at trial, the State asked whether he had been convicted of a felony or a crime involving moral turpitude. Before any answer was elicited, Appellant objected, noting that the State agreed to his motion in limine, and moved for a mistrial, alleging that the State violated the same. The court did not remember hearing the motion in limine, and the State could not recall agreeing to it. In any case, the State noted that no order was issued by

the court on the motion in limine and argued that since no answer was given to the stated question, a curative instruction would be sufficient to cure any error. In response, Appellant asserted that the State's actions were egregious, as it was in direct violation of what was previously agreed to, and claimed that the State's question poisoned the jury. After the court overruled Appellant's objection to the violation of the motion in limine, Appellant asked for an instruction to disregard and moved for a mistrial. The court denied Appellant's motion for mistrial but granted his request for an instruction to disregard, telling the jurors to "please disregard the last question that the State's attorney asked." The State then asked no more questions of Appellant's criminal history.

A mistrial is appropriate only when the improper conduct was "so prejudicial that expenditure of further time and expense would be wasteful and futile." *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004) (citation omitted). It is required only in extreme circumstances when the prejudice is incurable. *Id*. Whether a mistrial was warranted lies within the trial court's discretion, and we, reviewing that decision for an abuse of discretion, will only reverse if the trial court's ruling lies outside the zone of reasonable disagreement. *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007). In determining whether the trial court erred by denying a motion for mistrial, we consider the severity of the misconduct, i.e., the magnitude of the prejudicial effect, the measures adopted to cure the misconduct, and the certainty of conviction absent the misconduct. *Archie*, 221 S.W.3d at 700; *Hawkins*, 135 S.W.3d at 77.

In looking at the first factor, we find the prejudicial effect, if any, to be minimal. Although the State may have engaged in bad gamemanship by first agreeing to Appellant's motion in limine, violating the same, and then abandoning any questions in this regard, the record is clear that the trial court never ruled on the motion. Also, contrary to Appellant's assertion, we also note that the question posed did not imply that he had been convicted of a previous crime as the question was

phrased "have you been" convicted of a felony, not "isn't it true." Such an open-ended, unanswered question certainly did not convey that Appellant was previously convicted of any offense. Moreover, the State never posed a similar question again, and no further mention of any previous crimes was made by either party.

Turning to the measures adopted to cure the alleged error, we note that an instruction to disregard was given. As the Court of Criminal Appeals noted in *Russeau*, the asking of an improper question rarely requires the granting of a mistrial, because generally the harm can be cured by an instruction to disregard. *Russeau v. State*, 171 S.W.3d 871, 885 (Tex. Crim. App. 2005) (citing *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999)). After reviewing the question posed, as well as other cases that have addressed improper remarks, we conclude that the conduct here was certainly less prejudicial than other incidents found to be curable by a similar instruction. *See Young v. State*, 137 S.W.3d 65, 67-68 (Tex. Crim. App. 2004) (holding that venireperson's statement in aggravated sexual assault of a child case that in twenty-five years' of social work she had never had a child lie about being sexually assaulted did not warrant a mistrial because an instruction, had it been requested, would have cured any prejudice from the remarks); *Long v. State*, 823 S.W.2d 259, 267 n.9 (Tex. Crim. App. 1991) (prosecutor's argument that used an Adolf Hitler analogy, implying defendant was evil, could have been cured by an instruction to disregard). Thus, we believe that any prejudicial impact caused by the uttering of the question was cured by the court's instruction to disregard.[3] *See, e.g., Banks v. State*, 955 S.W.2d 116, 119 (Tex. App. – Fort Worth 1997, no pet.)

---

[3] Appellant asserts that because the jury "immediately" returned a guilty verdict, they obviously did not follow the trial court's instruction. However, the record does not reflect how fast the jury reached its conclusion. At most, the record shows that closing arguments were heard shortly after 8:48 a.m., and that the jury's verdict was read just before 1:30 p.m., when the case recessed until the punishment hearing. We have no indication as to how long the closing arguments lasted, much less if the jury was given a lunch break. Thus, we cannot conclude whether the jury deliberated for hours or only a few minutes. Moreover, even if we accepted Appellant's position that the jury "immediately came back with a guilty verdict," there is nothing in the record to suggest that the jury disregarded the trial court's instruction apart from Appellant's own presumption. There are no jury notes in the record, and as noted

("The admission of an extraneous bad act or offense evidence may be cured by an instruction to disregard.").

Finally, we note that Appellant's conviction was certain absent the misconduct. Based on Martinez's testimony and the photographs of her bruises admitted at trial, the evidence of Appellant's guilt was overwhelming. Thus, the certainty of conviction without the State's question was great. *See Pierce v. State*, 234 S.W.3d 265, 268 (Tex. App. – Waco 2007, pet. ref'd) (finding no error in trial court's failure to grant a mistrial from witness's statement that she knew defendant from "going through booking at the jail," as defendant's guilt was overwhelming).

In short, after reviewing the relevant factors, we find at most, a minimal prejudicial effect, that the instruction to disregard cured that effect, and that Appellant's conviction was certain had the question not been posed. Accordingly, we hold that the trial court did not err in failing to grant Appellant's motion for mistrial. Issue Two is overruled.

## CONCLUSION

Having overruled Appellant's issues, we affirm the trial court's judgment.


GUADALUPE RIVERA, Justice

June 15, 2011

Before Chew, C.J., McClure, and Rivera, JJ.

(Do Not Publish)

---

above, the open-ended, unanswered question itself did not imply that Appellant had a criminal conviction, there was no further mention of Appellant's possible criminal history, and the instruction itself was sufficient to cure any prejudicial effect. Moreover, as will be discussed more fully below, we note that Appellant's conviction was certain, and therefore, that may have been reason enough for the jury to "immediately" return a guilty verdict.