

# IN THE
# TENTH COURT OF APPEALS

## No. 10-11-00035-CR

**BRANDON CORNELIUS HARRIS,**

                                                    **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                                   **Appellee**

---

### From the 85th District Court
### Brazos County, Texas
### Trial Court No. 08-03647-CRF-85

---

## MEMORANDUM OPINION

---

Appellant Brandon Harris was indicted for the murder of Obije Lewis at an apartment complex in Bryan. Harris and a friend of Lewis's father both lived at the apartment complex. Harris and Lewis began having problems because Harris believed that Lewis and his friends had stolen Harris's car stereo. First, Harris saw Lewis at a gas station and confronted him about the stereo. The confrontation led to a fistfight, during which Lewis and his friends broke out two windows on Harris's car and Harris rammed Lewis's car. Harris and his cousin said that Lewis pointed a handgun at Harris

at the apartment complex around a week later.

About three weeks after the dispute began, Lewis, his father, and some friends went swimming at the apartment complex. After swimming, Lewis and his cousin were walking around the apartments and saw Harris on Harris's apartment balcony. They started running, with Harris giving chase, and Lewis made it to the door of his father's friend's apartment but could not get in. He began running again but tripped over a drain pipe and ran into an air conditioning unit. At that point, Harris caught up with Lewis and stabbed him in the upper left side of his back with an eight-inch kitchen knife. Lewis died shortly thereafter.

The two-paragraph indictment alleged that Harris: (1) intentionally or knowingly caused Lewis's death by stabbing him with a knife (TEX. PENAL CODE ANN. § 19.02(b)(1) (West 2011)); and (2) with intent to cause serious bodily injury to Lewis, committed an act clearly dangerous to human life that caused the death of Lewis by stabbing him with a knife (*Id.* § 19.02(b)(2)). The indictment also alleged that Harris used the knife as deadly weapon. Before trial, the State waived the first paragraph and went to trial on only the section 19.02(b)(2) murder charge. The State also waived the deadly-weapon allegation.

Harris testified that, on the night of the offense, when he first saw Lewis at the apartment complex, he walked to a payphone to call the police to arrest Lewis for taking his stereo (Harris had pressed charges against Lewis for burglary of his vehicle). Harris could not get through to the assigned detective, so he then called 9-1-1 but was told no one would be sent to arrest Lewis. He called the police department again and

was also told by them that no one would be sent. Harris then returned to his apartment and got a knife to protect himself. He came out of his apartment with the knife and saw Lewis and another man (Lewis's cousin) standing at the bottom of the stairs.

As Harris came down the stairs, Lewis and his cousin began to walk off and Harris followed them. When Lewis and his cousin started running, he chased them and caught up to Lewis after Lewis could not get in the apartment and had run into the air conditioning unit. While Harris was still running, he stabbed Lewis one time. Harris testified that he did not intend to kill Lewis or hurt him "real bad;" that he did not intend to stab that deep; that he was trying to stab Lewis somewhere in the arm; and that he intended "just to cut him a little bit" so that Lewis would leave him alone. The next day, when Harris learned that Lewis had died, he turned himself in to authorities.

The medical examiner testified that the stab wound was consistent with a straightforward motion, rather than an over-the-head motion, and that the wound was seven inches deep. The knife cut through the muscle of Lewis's upper back, fractured two ribs, passed through his left lung, and penetrated the left side of his heart. That type of wound would have required a considerable amount of force, but the knife had not been buried to the hilt. Even without penetrating the heart, the injury would have been life-threatening but possibly survivable with medical attention.

The trial court submitted a jury charge instructing that, if the jury believed beyond a reasonable doubt that Harris, with intent to cause serious bodily injury to Lewis, committed an act clearly dangerous to human life that caused the death of Lewis by stabbing him with a knife, the jury should find Harris guilty of murder. The trial

court denied Harris's request to submit two lesser-included offenses to the jury: aggravated assault and manslaughter.

The jury found Harris guilty of section 19.02(b)(2) murder and assessed a thirty-year prison sentence. On appeal, Harris claims in two issues that the trial court committed reversible error when it failed to charge the jury on aggravated assault and manslaughter as lesser-included offenses.

## Lesser-Included Offenses

The determination of whether a lesser-included-offense instruction requested by a defendant must be given requires a two-step analysis. *Rousseau v. State,* 855 S.W.2d 666, 672-73 (Tex. Crim. App. 1993); Royster *v. State,* 622 S.W.2d 442, 446 (Tex. Crim. App. 1981) (plurality op. on reh'g).

The first step asks whether the lesser-included offense is included within the proof necessary to establish the offense charged. *McKithan v. State,* 324 S.W.3d 582, 587 (Tex. Crim. App. 2010). We must compare the statutory elements and any descriptive averments in the indictment for the greater offense with the statutory elements of the lesser offense. *Ex parte Amador,* 326 S.W.3d 202, 206 n.5 (Tex. Crim. App. 2010); *Ex parte Watson,* 306 S.W.3d 259, 263 (Tex. Crim. App. 2009); *Hall v. State,* 225 S.W.3d 524, 535-36 (Tex. Crim. App. 2007); *see also* TEX. CODE CRIM. PROC. ANN. art. 37.09 (West 2006). This step is a question of law. *Hall,* 225 S.W.3d at 535.

The second step of the lesser-included-offense analysis is to determine if there is some evidence from which a rational jury could acquit the defendant of the greater offense while convicting him of the lesser-included offense. *Guzman v. State,* 188 S.W.3d

185, 188-89 (Tex. Crim. App. 2006). The evidence must establish the lesser-included offense as "a valid rational alternative to the charged offense." *Segundo v. State*, 270 S.W.3d 79, 90-91 (Tex. Crim. App. 2008). We review all of the evidence presented at trial. *Hayward v. State*, 158 S.W.3d 476, 478-79 (Tex. Crim. App. 2005); *Rousseau*, 855 S.W.2d at 673.

**Manslaughter**

We begin with Harris's second issue, which contends that the trial court erred by refusing to submit manslaughter as a lesser-included offense.

Manslaughter is recklessly causing the death of an individual, TEX. PENAL CODE ANN. § 19.04(a) (West 2011), and a person acts recklessly if he is aware of but consciously disregards a substantial and unjustifiable risk that the result will occur. *Id.* § 6.03(c). The indictment's charge of section 19.02(b)(2) murder required proof that Harris (1) intended to cause serious bodily injury and (2) committed an act clearly dangerous to human life (3) by stabbing Lewis with a knife. *See* TEX. PENAL CODE ANN. § 19.02(b)(2).

Harris argues that his testimony shows that he had no intent to kill or to cause serious bodily injury, but that he was aware of the risk that a knife could be dangerous and could cause serious bodily injury, and that he acted recklessly by wanting to stab Lewis in the arm and cut him.

The State notes, however, that manslaughter cannot be a lesser-included offense of section 19.02(b)(2) murder under the first step because, while recklessly causing death is encompassed by intending to cause serious bodily injury, manslaughter does

not require proof that Harris committed an act clearly dangerous to human life; that is, manslaughter requires proof of an element not required to prove section 19.02(b)(2) murder. The State adds that manslaughter requires a culpable mental state of recklessly causing a death, while section 19.02(b)(2) murder requires only an intent to cause serious bodily injury with no mental state associated with the death. Thus, the State concludes, the facts required to prove the lesser offense of manslaughter requires an element not required to prove section 19.02(b)(2) murder.

We agree with the State. Under the first step of our analysis, manslaughter is not a lesser-included offense of section 19.02(b)(2) murder.[1] *Cavazos v. State*, 329 S.W.3d 838, 845-46 (Tex. App.—El Paso 2010, pet. granted) (citing *Zavala v. State*, No. 05-08-00621-CR, 2009 WL 2343261, at *1 (Tex. App.—Dallas July 31, 2009, pet. ref'd) (mem. op., not designated for publication)) (concluding that manslaughter is not a lesser-included offense of felony murder because manslaughter requires a culpable mental state for causing death and felony murder does not). We overrule issue two.

### Aggravated Assault

In his first issue, Harris contends that the trial court erred by refusing to submit aggravated assault as a lesser-included offense of section 19.02(b)(2) murder.

As noted above, the indictment's charge of section 19.02(b)(2) murder required

---

[1] In holding that manslaughter and criminally negligent homicide were lesser-included offenses of murder under the first step, our analysis in *Pierce v. State,* 234 S.W.3d 265, 269-70 (Tex. App.—Waco 2007, pet. ref'd), did not distinguish intentional murder (section 19.02(b)(1)) from section 19.02(b)(2) murder, and, unlike Harris, the defendant in *Pierce* was charged with and tried on both murder offenses. *See id.* Nor did *Pierce* separately analyze manslaughter as a lesser-included offense of section 19.02(b)(2) murder. *See id. Pierce* is thus not authority for the proposition that manslaughter is a lesser-included offense of section 19.02(b)(2) murder under the first step.

proof that Harris (1) intended to cause serious bodily injury and (2) committed an act clearly dangerous to human life (3) by stabbing Lewis with a knife. Serious bodily injury means "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." TEX. PENAL CODE ANN. § 1.07(a)(46) (West Supp. 2011). An act clearly dangerous to human life is one that objectively creates a substantial risk of death. *Depauw v. State,* 658 S.W.2d 628, 634 (Tex. App.—Amarillo 1983, pet. ref'd); *see also Lugo-Lugo v. State,* 650 S.W.2d 72, 81 (Tex. Crim. App. 1983).

A person commits assault if he intentionally, knowingly, or recklessly causes bodily injury to another. TEX. PENAL CODE ANN. § 22.01(a)(1) (West Supp. 2011). A person commits aggravated assault if he commits assault as defined in section 22.01 and the person "causes serious bodily injury to another." *Id.* § 22.02(a)(1); *see Ferrell v. State,* 55 S.W.3d 586, 598 (Tex. Crim. App. 2001). Aggravated assault—causing serious bodily injury is a result-oriented offense. *Landrian v. State,* 268 S.W.3d 532, 533, 537 (Tex. Crim. App. 2008); *Johnson v. State,* 271 S.W.3d 756, 761 (Tex. App.—Waco 2008, pet. ref'd).

We agree with the State's concession that aggravated assault can be a lesser-included offense of section 19.02(b)(2) murder under the first step because intent to cause serious bodily injury encompasses intent to cause bodily injury and causes serious bodily injury. *See Hayward,* 158 S.W.3d at 479 ("It is possible, under the right set of circumstances, for the statutory elements of assault to be included within a murder because the two offenses could have the same culpable mental state and bodily injury can be a subset of serious bodily injury."); *see also Dale v. State,* 90 S.W.3d 826, 833 (Tex.

App.—San Antonio 2002, pet. ref'd) ("The State concedes, and we agree, that aggravated assault is a lesser-included offense of murder.") (citing *Cardenas v. State*, 30 S.W.3d 384, 392 (Tex. Crim. App. 2000)). We thus proceed to the second step to determine if there is some evidence from which a rational jury could acquit the defendant of the greater offense while convicting him of the lesser-included offense. *Guzman*, 188 S.W.3d at 188-89. That evidence must be evidence that would permit the jury to rationally find that, if Harris is guilty, he is guilty only of the lesser-included offense. *Id.*; *see Hall*, 225 S.W.3d at 536. The evidence must also establish the lesser-included offense as a valid and rational alternative to the charged offense. *Sweed v. State*, 351 S.W.3d 63, 69 (Tex. Crim. App. 2011).

Harris's position is that his own testimony supports the submission of aggravated assault as a lesser-included offense. Harris testified that he did not intend to kill Lewis; he did not intend to hurt him "real bad;" his intent was to just cut him a little bit; he was trying to stab him somewhere in the arm; and he did not intend to stab him as deeply as he did. He also points out that he stabbed him only one time and that it was a jab, not an over-the-head stab. In sum, Harris argues that his testimony shows that his intent was to only cause bodily injury and serious bodily injury resulted.

The State points out other parts of Harris's testimony to show that Harris's statements that he did not intend to kill Lewis or hurt him badly do not refute his intention to cause serious bodily injury and his commission of an act clearly dangerous to human life. Lewis admitted that he knew how dangerous a knife is, that a knife could cause serious bodily injury, that he could be hurt badly if he were stabbed in the

back with an eight-inch knife, that he knew the knife could kill Lewis, and that he knew that cutting someone with an eight-inch knife "would hurt somebody real bad."

We are persuaded by the State's argument that Harris's testimony failed to establish that if Harris is guilty, he is guilty only of the lesser-included offense and that the evidence does not establish aggravated assault as a valid, rational alternative to the murder charge. *See Forest v. State,* 989 S.W.2d 365, 367-68 (Tex. Crim. App. 1999) ("Appellant admitted he meant to shoot the victim "in the butt" but claims that he did not intend to kill him. By his own testimony, appellant intended to cause serious bodily injury to the victim. It is not contested that appellant's act caused the victim's death. What's more, firing a gun in the direction of an individual is an act clearly dangerous to human life."); *Dale,* 90 S.W.3d at 833 ("Defendant's statement that he did not intend to cause Johnson's death or serious bodily injury is not evidence that he is guilty only of aggravated assault in light of other evidence of his intent to cause serious bodily injury."); *see also Harrell v. State,* 659 S.W.2d 825, 827 (Tex. Crim. App. 1983) ("Appellant admitted shooting the deceased, but testified that he intended to hit the deceased in the arm when he fired the .22 rifle from 150 yards away. Under [former] § 19.02(a)(2), appellant intended to cause serious bodily injury to the deceased and committed an act clearly dangerous to human life that caused the death of the deceased. … Because appellant's testimony showed him guilty of murder under [former] § 19.02(a)(2), it did not constitute evidence that if guilty he was guilty of aggravated assault. Since this evidence did not raise the issue that he was guilty only of aggravated assault, it was not error to refuse a charge on that offense."). We overrule issue one.

Having overruled both issues, we affirm the trial court's judgment.


REX D. DAVIS
Justice

Before Chief Justice Gray,
  Justice Davis, and
  Justice Scoggins
Affirmed
Opinion delivered and filed June 27, 2012
Do not publish
[CRPM]